228 So.2d 281 (1969)
Walter HEADLEY, Chief of Police of the City of Miami, a Municipal Corporation of Dade County, Florida, Petitioner,
v.
Glenn BARON, Respondent.
No. 37579.
Supreme Court of Florida.
July 16, 1969.
Rehearing Denied November 14, 1969.
*282 Alan H. Rothstein, City Atty., and Charles K. Allan, Asst. City Atty., for petitioner.
Walter E. Gwinn, Miami, for respondent.
THORNAL, Justice.
We have for review a decision of a district court of appeal accompanied by a certificate that the question passed upon is one of great public interest. Fla. Const. art. V, § 4, F.S.A.; Headley v. Baron, 211 So.2d 223 (3d Dist.Ct.App.Fla. 1968).
Our problem involves the extent of immunity granted by Fla. Stat. § 932.29, F.S.A. (1965), when a city police officer is subpoenaed to testify before a grand jury.
Respondent Baron was a police officer of the City of Miami. He held the rank of Lt. Colonel of Police (unclassified) and Captain of Police (classified). On October 18, 1966, Baron was compelled, by subpoena, to appear before the Dade County Grand Jury which was investigating bribery in the police department. He testified regarding the subject matter of the inquiry. Baron was asked questions concerning his alleged acceptance of a gratuity of $3,000.00 on each of two occasions in consideration of permitting certain concerns to operate wrecker services in designated zones of the City of Miami. Before testifying, Baron did not waive the statutory immunity which we shall later discuss. On January 20, 1967, Baron was dismissed from his police department employment on the order of the late Walter Headley, then Chief of Police. Dismissal was grounded on all the testimony given before the Dade County Grand Jury concerning Baron's acceptance of bribes. Baron then appealed his dismissal to the Civil Service Board. He also instituted this mandamus proceeding to compel the Chief to reinstate him. He obtained an injunction against the Board to stay all proceedings until the mandamus could be completed.
Relying on Fla. Stat. § 932.29 (1965), F.S.A., the trial judge ordered the Chief to restore Baron to his former position. The District Court of Appeal, Third District, affirmed, and certified to us the immunity problem.
Petitioner contends that the subject statute does not immunize a police officer against loss of his job when he testifies before a grand jury concerning the crime of bribery.
Respondent, with support from the trial judge and district court majority, insists that he is immune from losing his job since he was compelled by force of the statute to give involuntary testimony before the grand jury.
Fla. Stat. § 932.29 (1965), F.S.A., reads:

"No person shall be excused from attending and testifying, or producing any book, paper or other document before any court upon any investigation, proceeding or trial, for a violation of any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, upon the ground or for the reason that the testimony of evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce *283 evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." (Emphasis added.)
In effect at all times material was Rule XVI, § 12, Civil Service Rules and Regulations of the City of Miami, which reads in part:
"(a) Should any officer or employee in the classified service of the City of Miami appear before a Grand Jury or Juries and refuse to sign an immunity waiver in advance of testimony before such Grand Jury or Juries and/or refuse to testify fully on all matters concerning the property, government, or affairs of the City, that such conduct shall constitute a breach of duty and that said employee shall be dismissed from the classified service of the City of Miami.
* * * * * *
"(c) No City employee shall be excused on plea of `self-incrimination' or for any other reason, from giving information which may bear on his own fitness to hold a job; he shall be dismissed for refusing to give such information."
We shall refer to § 932.29, supra, as the "immunity statute." The civil service rule will be referred to as the "forfeiture rule".
In the solution of our problem the "forfeiture rule" may be laid aside. Although Baron stated that he testified to the grand jury under the compulsive pressures of the rule, he was not dismissed because of any breach of the rule. The "immunity statute" compelled the testimony. A plea of self-incrimination would be of no avail against the immunization guarantee of the statute. There is no evidence that he was requested to sign a waiver of immunity. Hence, failure to comply with the "forfeiture rule" is not an element in our problem.
Baron did not testify before the grand jury because of the "forfeiture rule." His claimed protection here is the "immunity statute," not some benefit or amnesty promised by the "forfeiture rule." This distinguishes the instant case from Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). There, New Jersey had no immunity statute. Garrity, a police chief, testified in response to an investigation subpoena under the compulsive pressure of a job forfeiture statute. In a subsequent criminal proceeding, a confession which he made during the investigation was held to be inadmissible against him because it had been coerced by the statutory threat of removal from office if Garrity had claimed the benefit of his constitutional privilege against self-incrimination. Garrity involved a criminal prosecution based on a confession compelled by the threat of removal from office.
Since we are not concerned with the relevancy of Miami's "forfeiture rule," we are not burdened by any problem contingent on its constitutionality.
We are challenged squarely by a claim that Florida's "immunity statute" protects a police officer against being dismissed from the force because he testified concerning the subject of his dismissal before the grand jury. Obviously, bribery is one of the crimes comprehended by the statute. A grand jury inquiry is typical of the "investigation, proceeding or trial" which sets the stage for the immunizing impact of the Legislature's offer of amnesty to the penitent particeps crimini. State ex rel. Mitchell v. Kelly, 71 So.2d 887 (Fla. 1954). Our problem is to decide whether being fired from the Miami police force is a "penalty or forfeiture" which cannot be imposed on one who goes before a grand jury and accepts the Legislature's offer of protection.
Basically, an immunity statute is a legislative recognition of the extreme difficulty of proving certain types of crimes. *284 By the statute the Legislature makes an offer in behalf of the state. The suspect accepts it by testifying. The crime usually involves several suspects, none of whom could be effectively prosecuted unless at least one of the suspects can be induced to testify under a guarantee that he will not thereafter be prosecuted. Without the immunity the suspect would be entitled to the Fifth Amendment privilege against self-incrimination. Hence, it is said that the protection of the statutory immunity must be as broad as the constitutional privilege. Since the Constitution protects the individual against self-incrimination, the immunity granted in exchange for his testimony must in equal measure protect him from prosecution based on the testimony obtained in the bargain. Actually, an immunity statute is not constitutionally compelled to extend the amnesty beyond the criminal aspect of the matter. 8 Wigmore, Evidence §§ 2281, 2282 (McNaughton rev. 1961).
Our problem in the instant matter is, therefore, one of statutory construction rather than constitutional interpretation. It is admitted that by giving the bribery testimony before the grand jury, Baron was immunized against prosecution for the crime of bribery. That deal the state clearly made with legislative sanction. To that extent the constitutional mandate against self-incrimination was fully respected and preserved. The Florida Statute, however, goes further. It provides that "* * * no person shall be * * * subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, * * *." It is this language which presents to us the problem of deciding whether the police officer's loss of his job, otherwise secure under civil service, is a "penalty or forfeiture" which the statute promises shall not be imposed as a result of facts revealed in the investigation that was purified by the legislative promise of immunization. The trial judge and the District Court majority held that to dismiss the officer from the force would be to impose a "forfeiture," thereby breaching the state's promise of immunity.
We remind that we are not concerned with the vagaries of a refusal to testify in the disciplinary proceeding itself. For example, we have held that a lawyer cannot be disbarred because he pleads the Fifth Amendment in an official inquiry. Sheiner v. State, 82 So.2d 657 (Fla. 1955). The Supreme Court of the United States has held to the same effect. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). See also Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). These decisions would be apposite if Baron had been called before the Civil Service Board and had been fired solely because he pleaded the Fifth Amendment when interrogated by that or some other agency.
At this point we caution that we do not here hold that respondent has any organic right to be a policeman. McAuliffe v. City of Bedford, 155 Mass. 216, 29 N.E. 517 (1892). We agree that an individual has no constitutional right to be hired by the government. However, once employed and having earned benefits such as job security and seniority, a government employee does achieve an employment status which he is entitled to protect against unjust or unlawful deprivation. Jones v. Board of Control, 131 So.2d 713 (Fla. 1961). Again, we remind that we do not here deal with a constitutional right so much as we undertake to apply the broad language of Florida's "immunity statute."
Petitioner Headley takes refuge in our opinions in State ex rel. Arnold v. Revels, 100 So.2d 51 (Fla. 1957), and The Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964). These cases did not place lawyers in a singular category so far as Fifth Amendment rights are concerned. They simply held that a disbarment hearing *285 is not an "investigation, proceeding or trial" which would activate § 932.29, supra, the "immunity statute." In other words, in such a disciplinary hearing a lawyer is not compelled to testify as to any incriminating conduct. He can still assert his Fifth Amendment privilege against self-incrimination. Since the privilege is still available to him he is not granted any immunity in exchange for his testimony. By contrast, § 932.29, supra, takes away the privilege as to certain crimes and compels revelation of incriminating evidence. As a device used in the public interest to detect and punish criminals, the state grants immunity as a substitute for the individual's right to assert his privilege against incriminating himself. The rule of the cited "lawyer cases" is clearly not applicable here where the individual did respond to compulsive state processes by giving testimony in a proceeding governed by the "immunity statute."
We are finally led to our own decision relied upon by the District Court of Appeal in its holding that the legislative grant of immunity against a "forfeiture" protects an individual against the loss of his job when he testifies before a grand jury concerning any of the enumerated crimes found in § 932.29, supra. We are confronted squarely by the opinion of this Court in Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952). There, Seymour testified before the Duval County Grand Jury. He admitted bribing certain members of a school board in exchange for their agreement to hire him as architect for a school building project. On the basis of his testimony several members of the Board were indicted for violation of the bribery statutes. Later, the Florida State Board of Architecture instituted proceedings to revoke Seymour's license on the strength of his testimony before the Duval Grand Jury. This Court held that the proceeding to revoke the architect's license was an effort to impose a "forfeiture," which by the "immunity statute" the Legislature had bargained would not happen. Writing for the Court the late Justice Terrell stated:

"Whether the prosecution, penalty or forfeiture has to do with civil or criminal action is not material. The statute first quoted makes it applicable to both. The purpose of immunity statutes is to aid the prosecution in securing evidence in face of the guaranty offered by Section 12, Declaration of Rights against self incrimination. It should be liberally construed to effectuate the purpose for which it was designated. State ex rel. Byer v. Willard, Fla., 54 So.2d 179; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110.

"The terms of the statute must be as broad as the constitutional guaranty and when so construed it would avail the defendant nothing if it did not comprehend a proceeding to revoke his architect's certificate. A penalty generally has reference to punishment imposed for any offense against law. It may be corporal or pecuniary. A forfeiture is also a penalty and has to do with the loss of property, position or some other personal right for failure to comply with the law. The right to earn a living, including other personal rights are protected by the immunity statute. Watson v. Centro Espanol De Tampa, 158 Fla. 796, 30 So.2d 288; State ex rel. Hosack v. Yocum, 136 Fla. 246, 186 So. 448, 121 A.L.R. 270" Id. at 3 (Emphasis added.)
The Court then concluded:
"It is accordingly our view that a proceeding to revoke appellee's certificate as an architect amounts to a prosecution to effect a penalty or forfeiture as contemplated by Section 932.29, Florida Statutes 1941, F.S.A. The revocation of his certificate could be nothing short of a penalty or forfeiture, against all of which appellee is immunized by the statute."
*286 Our opinion in Seymour was relied upon by the District Court of Appeal, Third District, in State Beverage Department of Florida v. State ex rel. Zucker, 116 So.2d 640 (3d Dist.Ct.App.Fla. 1959). There, Zucker had been examined by an assistant state attorney with reference to gambling. He was held immune to criminal prosecution. Later, the State Beverage Department moved to revoke his liquor license on the basis of the testimony he had given regarding his bookmaking activities. The revocation proceeding was stopped by a writ of prohibition. The Court held that the proceeding for revocation of the liquor license was an attempt to bring about a forfeiture which was within the protective scope of the immunity granted by Fla. Stat. § 932.29 (1959), F.S.A.
The same Court rendered an identical holding in Hotel and Restaurant Commission v. Zucker, 116 So.2d 642 (3d Dist. Ct.App.Fla. 1959). There, Zucker's hotel license was saved against revocation by the immunity provisions of § 932.29, supra. The protection developed out of the same situation and the same testimony that saved Zucker's liquor license from revocation.
After prolonged deliberations, we have now reached the conclusion that the decisions in Seymour and the two Zucker cases discussed above were erroneous and should now be and are hereby overruled. The words in the statute, viz. "penalty or forfeiture" relate to any penalty or forfeiture which might arise out of or result from a conviction for one of the five crimes named in the statute. The word "forfeiture" is used in the statute in the same sense as the word "fine." The expression "fine and forfeiture" is a familiar one in criminal law and relates to punishment for the violation of a penal statute. Webster's dictionary defines "fine" as follows: "a certain payment of money imposed as punishment for an offense; * * * any penalty or forfeiture." (Emphasis added.)
The decision of the District Court is quashed with directions that this cause be remanded to the trial court for further proceedings consistent with this decision.
It is so ordered.
ROBERTS, DREW, ADKINS, THOMAS (Retired) and CALDWELL (Retired), JJ., concur.
ERVIN, C.J., dissents.

ON REHEARING
THORNAL, Justice.
We have before us a petition for rehearing filed by Glenn Baron asking us to reverse our recent ruling in Headley v. Baron, Case No. 37,579 (filed July 16, 1969, Fla.) There are certain statements made by petitioner Baron which we need to discuss.
Petitioner asserts that we erred in finding he "confessed" to bribery before the Dade County Grand Jury. He states that he never made any such admissions, and that, in fact, he vehemently denied such allegations when he appeared before the grand jury. We have carefully re-examined the entire record presented before us in this case, and must candidly admit that we were mistaken in finding that Glenn Baron confessed before the grand jury to accepting two bribes of $3,000.00 each. However, our mistake is understandable in that there are strong inferences in the record and briefs that Baron's statements before the grand jury implicated him in various bribes. Furthermore, petitioner Baron never supplied us with the transcript of testimony given before the grand jury. Therefore, our incorrect finding of fact was an easy mistake to make, and one which, quite frankly, could have easily been avoided if Mr. Baron had submitted the transcript of testimony for our review.
*287 This change in fact, however, does not change our holding in any respect. We believe that the interpretation, of Fla. Stat. § 932.29 (1965), F.S.A., presented for the first time in Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952), was wrong and must be reversed. We do so not because of any word definitions found in any dictionaries, not because of any changing society, and not because we are rewriting the statute. We reverse Seymour solely because of simple statutory interpretation. The words "penalty or forfeiture" when read in the entire context of § 932.29 clearly refer to a criminal "penalty or forfeiture."
Accordingly, the petition for rehearing is denied, but with the proviso that all references to admissions and confessions by petitioner Baron of accepting bribes be stricken from the original opinion.
It is so ordered.
ROBERTS, DREW, ADKINS and CALDWELL (Retired) JJ., concur.
ERVIN, C.J., dissents with opinion.
ERVIN, Chief Justice (dissenting).
I dissent on the ground that I would adhere to the decision of Florida State Board of Architecture v. Seymour, supra, in the disposition of the case.