361 So.2d 121 (1978)
Riccardo G. CIRAVOLO and Bennett G. Feldman, Petitioners,
v.
THE FLORIDA BAR, Respondent.
No. 50249.
Supreme Court of Florida.
April 13, 1978.
Rehearing Denied August 28, 1978.
Mallory H. Horton of Horton, Perse & Ginsberg, Miami, for petitioners.
Russell Troutman, President of The Florida Bar, Winter Park, and Wilson J. Foster, Jr., Bar Counsel, Tallahassee, for respondent.
PER CURIAM.
We must decide a most difficult question: whether or not evidence given by an attorney, following a grant of immunity under Section 914.04, Florida Statutes (1975), may be used against him in a disciplinary proceeding brought by The Florida Bar. We exercise our jurisdiction under Article V, Section 15, Florida Constitution, and answer this question in the affirmative.
Petitioners, Ciravolo and Feldman, are members of The Florida Bar and are subject to the exclusive jurisdiction of this court. They are presently under investigation for professional misconduct and are claiming disciplinary immunity.
*122 Prior to 1971, Ciravolo was a law partner of Thomas O'Malley. In that year, O'Malley was elected Insurance Commissioner and Treasurer for the State of Florida and as a consequence of his election, sold his share of the partnership to Ciravolo and Feldman.
In 1974, an investigation was conducted into O'Malley's financial affairs for possible criminal charges. During the investigation, the prosecutor subpoenaed Ciravolo and Feldman to appear with their personal and business records before the Leon County Grand Jury. Pursuant to the provisions of Section 914.04, both were granted immunity in exchange for their testimony. Counsel for the state and for petitioners were of the opinion that the immunity granted extended to disciplinary proceedings brought by The Florida Bar. This is shown by the following conversation between counsel:
[Petitioner's Counsel] It's our understanding  and I want to confirm it with the state attorney or his assistant  that by this, fact of this subpoena, under Florida law my clients have immunity. That immunity extends to use immunity in the federal courts, and, further, that the immunity is being given for any matter including, but not limited to, any procedures before the Florida Bar 
[Assistant State Attorney] That's correct.
[Petitioner's Counsel]  Or any grievance procedures.
[Assistant State Attorney] That's correct.
[Petitioner's Counsel] Am I correct so far?
[Assistant State Attorney] If you'll examine Statute 914.04, you'll find that it includes the language of any penalty or forfeiture. And the courts have construed this to mean administrative hearings or disciplinary hearings before any professional organization such as the Florida Bar.
[Petitioner's Counsel] And, Mr. Willis, that's our understanding here today?
[Assistant State Attorney] Yes, sir. It is.
[Petitioner's Counsel] And, further, I take it it's our understanding that [neither] your office nor the grand jury will dilvulge [sic] information before this grand jury voluntarily or involuntarily to the Florida Bar?
Assistant State's Attorney: That is correct.
This discussion was followed by a letter of confirmation from the assistant state attorney.[*] In reliance on this broad grant of immunity, petitioners testified as requested and produced their records before the grand jury.
The Florida Bar subsequently commenced disciplinary proceedings against Ciravolo and Feldman based upon those transactions involved in the above mentioned matter. By petition for writ of prohibition, petitioners requested this court to halt further action by the Bar, claiming disciplinary immunity.
In order to determine whether the state attorney was authorized to grant disciplinary immunity to petitioners, we must review our immunity statute and those cases in which it has been considered in the context of professional disciplinary proceedings. Section 914.04, Florida Statutes (1975) provides:

Witnesses; person not excused from testifying in certain prosecutions on ground testimony might incriminate him; immunity from prosecution.  No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney, upon investigation, proceeding, or trial *123 for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding. (emphasis added)
Clearly, this statute refers to immunization from more than criminal prosecution. A person compelled to testify or produce evidence cannot be subjected to any "penalty or forfeiture" for those matters concerning which the testimony or evidence is produced. In Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952) the terms "penalty and forfeiture" were interpreted as follows:
A penalty generally has reference to punishment imposed for any offense against the law. It may be corporal or pecuniary. A forfeiture is also a penalty and has to do with the loss of property, position or some other personal right for failure to comply with the law. The right to earn a living including other personal rights are protected by the immunity statute. At p. 3.
In Seymour, we held that an architect who had received statutory immunity from criminal prosecution was also immune from license revocation when that revocation was based upon his immunized statements. In its opinion, this court expressly rejected the New York Court of Appeals' decision in In re Rouss, 221 N.Y. 81, 116 N.E. 782 (1917), which held that disbarment of an attorney was not a "penalty or forfeiture" contemplated by the New York immunity statute.
Twelve years later, in Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964), the court distinguished Seymour in a case where disciplinary proceedings were brought against an attorney who claimed disciplinary immunity. Adopting some of the reasoning of Rouss, the court held that Florida's immunity statute could not prevent disciplinary action against an attorney because the Florida Constitution conferred on this court the "exclusive jurisdiction" to admit and discipline attorneys. Article V, Section 23, Florida Constitution (1885).
Later, in Headley v. Baron, 228 So.2d 281 (Fla. 1969), the court expressly overruled Seymour and held that a police officer, granted statutory immunity, could be discharged from office for conduct which had been the subject of his grand jury testimony. The effect of Headley was to limit the scope of statutory immunity to criminal penalties and forfeitures.
Four years later, in Lurie v. Florida State Board of Dentistry, 288 So.2d 223 (Fla. 1973), a divided court overruled Headley and resurrected Seymour. Grounding its decision on statutory construction, and without any mention of Massfeller or its constitutional implications, the majority returned to a broad statutory reach for all immunized professionals stating:
Immunity extended by the State under Section 932.29, F.S., F.S.A., 1967 in surrender of the Fifth Amendment privilege is not divisible so that the protection vouchsafed thereunder is only from criminal prosecution.
* * * * * *
To be efficacious in securing testimony of a citizen the immunity extended must be coextensive with all possible governmental penalties and forfeitures, criminal or civil. Persons holding professional licenses cannot be excepted from total immunity protection. At p. 226.
It is upon Lurie that petitioners base their claim to disciplinary immunity. The following language from that case supports their contention:
Fifth Amendment freedoms are never lightly surrendered. Consequently, the state on its part should not be technically "sharp" or narrow in honoring its immunity commitment. When it professes to extend total immunity by statute its judiciary *124 should not circumscribe or hedge or renege in part its solemn promise with exceptions permitting imposition of certain penalties and forfeitures in administrative proceedings. To do so would not only debilitate the effectiveness of the immunity grant; it would also invariably serve to engender distrust for a state officer's promise. Fundamental fairness dictates an open and aboveboard agreement between both parties, the state and the witness. No hypocrisy or pretense can be indulged in by the state to break so solemn a pledge when a witness is compelled by law to testify.
There are those who would hyperbolically parade the horribles of felons disguised as physicians or lawyers preying on unsuspecting patients or clients under a cloak of governmental immunity. Such feared abuses and evils ordinarily never transpire because prosecuting officers exercise reasonable discrimination in granting statutory immunity. A certain degree of confidence must be placed in state attorneys and other officials by assuming they will not recklessly grant immunity to the extent of opening flood gates for great numbers of the unscrupulous to professionally victimize the public. It is to be assumed that such officials will act so as to use this bargaining tool to the state's greatest advantage without appreciable victimization of the public. At p. 227.
Respondents argue that the above cited language is dicta and is not controlling here. The actual holding in Lurie is much narrower. In that case, disciplinary immunity was extended to a dentist whose license was subject to revocation by an agency of the executive branch of government. The holding in Seymour, which was revived by Lurie, also concerned a professional subject to executive branch supervision. In that case, disciplinary immunity was extended to a state licensed architect. In Massfeller, however, the court held that the discipline of an attorney was an exception to the rule announced in Seymour by virtue of the exclusive jurisdiction of this court over members of the legal profession. Respondents argue that by reviving Seymour, the exception in Massfeller was also revived, and conclude that petitioners were on notice that the immunity granted under Section 914.04 did not extend to disciplinary proceedings brought by The Florida Bar. Massfeller is not controlling. In that case, the petitioning attorney responded to a rule to show cause issued by a circuit court judge who was conducting an inquiry into petitioner's alleged misconduct as an attorney practicing in his circuit. That proceeding was not one in which the immunity statute applied. It was not an "investigation, proceeding, or trial, for a violation of any of the statutes of this state... ." Thus, petitioner was not compelled to testify by force of the statute. His statements were not exempt from use in future criminal prosecutions or any other type of action, including Bar disciplinary proceedings. In the present case, petitioners were compelled to appear by subpoena and to testify by statute. Massfeller, as distinguished above, is not dispositive.
Petitioners' reliance on Lurie was not misplaced. The majority's broad sweep of explanatory language and express, but unfortunate, reference to attorneys, supports petitioners' contention that a grant of immunity under Section 914.04 extends to disciplinary proceedings brought by The Florida Bar. Since the testimony given in this case was predicated on a justifiable interpretation of this court's strong language in Lurie, and the court's imperfect handling of precedents, we are bound by the understanding reached by counsel in this case. This court supplied the material that misled.
We now limit Lurie and hold that a grant of immunity under Section 914.04 does not immunize attorneys from disciplinary proceedings instituted or imposed by or under authority of the rules of this court.
The meaning of Article II, Section 3 of the Florida Constitution is clear:
... No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
*125 The constitution of this state vests exclusive jurisdiction over the admission and discipline of attorneys in this court. Article V, Section 15, Florida Constitution.
Is there any way in which an attorney may be granted immunity from disciplinary proceedings? Yes, by application to and order of this court. Where it appears that the greater good to society will be served by granting immunity from disciplinary action to an attorney, we will do so. But, we will not allow officials of other branches to tread on the constitutional power vested in this court by the people of this state. It is disquieting having attorneys who may have engaged in serious misconduct handling the affairs of clients. It is this disturbing feature that motivated The Florida Bar to take action in this case. The Bar has acted responsibly and in accord with the highest traditions of the profession. Immunity is an important tool in a prosecutor's workshop. It allows him to obtain and utilize evidence which would otherwise be unavailable because of important and cherished federal and state constitutional freedoms. The court is concerned about the practice of law by those involved in wrong doings of a criminal nature, but, we are also mindful that this court and the profession should not place a stumbling block in the path of the citizens of this state who strive mightily to uncover and rid our communities of criminal acts.
Accordingly, The Florida Bar is prohibited from proceeding further with charges against these petitioners.
It is so ordered.
OVERTON, C.J., BOYD and HATCHETT, JJ., and PEARSON, District Court Judge, concur.
ADKINS, J., concurs in result only with an opinion.
ENGLAND, J., concurs in part and dissents in part with an opinion, with which SUNDBERG, J., concurs.
ADKINS, Justice, concurring in result.
I concur in the result, but would recede from Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964).
There should be no impediment placed in the path of prosecutors who feel it necessary to grant immunity to one in order to convict another.
ENGLAND, Justice, concurring in part and dissenting in part.
I readily concur with the Court's exclusion of attorney disciplinary proceedings from the immunity statute, and I approve the procedural means now devised by which this Court may confer immunity from professional discipline in situations where the testimony or records of an attorney are deemed indispensible to some public purpose. I do not agree, however, with the Court's exoneration of Ciravolo and Feldman. My disagreement centers around the binding effect which the majority has attributed to this Court's dicta in Lurie v. Florida State Board of Dentistry, 288 So.2d 223 (Fla. 1973), and to the significance accorded petitioners' "justifiable interpretation of this court's strong language" in that case. I suggest that the admittedly "unfortunate", one-word reference to lawyers in Lurie pales in comparison with the resonant pronouncements on the same subject in Massfeller, and that petitioners' interpretation was not genuinely justified.
My first point of departure from the Court's decision today is its view of The Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964). The majority has fairly traced this Court's checkered treatment of professionals under the immunity statute  a history with little consistency save only, until today, the treatment of attorneys. Massfeller is the genesis of the notion that attorneys cannot claim the benefits of an immunity statute in disciplinary proceedings. As the majority notes, the Court in Massfeller held the immunity statute inapplicable to the circuit court disciplinary proceedings on the ground that the proceeding was not an "investigation, proceeding, or trial, for a violation of any of the statutes of *126 this state." But the Court also had some very strong things to say about the reach of any legislative enactment which might be viewed as limiting the Court's disciplinary power over attorneys.
"The power of courts to discipline attorneys at law is as ancient as the common law itself... . The constitutional power contained in Art. V, Sec. 23 of the Florida Constitution is but a recognition of this already existing authority of the Florida Courts. The independence of the Courts of the other two coordinate and equal branches of our state government does not permit of any interference by either of said branches in the exercise by the Courts of this state of their inherent and constitutional power to discipline members of the Bar. Any statute enacted by the Legislature which attempted to do so would of necessity be stricken down as unconstitutional... . [W]e hold that [the immunity statute] has no applicability to disciplinary proceedings of members of the Florida Bar and ... [i]n so holding, we find ourselves in accord with the decisions of the highest courts of appeal of other states... . In re Rouss, 221 N.Y. 81, 116 N.E. 782. In the case from New York, In Re Rouss, supra, the Court of Appeals of that state was construing the effect of an immunity statute in words almost identical with the Florida statute. There the Court, speaking through Mr. Justice Cardozo, stated that disbarment was not a penalty or forfeiture against which the statute immunized a member of the Bar."[1]
If the majority feels bound by one unfortunate reference to lawyers in the hyperbolic statement in Lurie, I fail to see why it feels any less bound by Massfeller's clear enunciation that so far as immunity for lawyers is concerned, the constitutional "separation of powers" presents an insurmountable barrier.[2]
My second point of departure from the majority is its attribution of binding effect to counsel's interpretation of Lurie. Article II, Section 3 of the Florida Constitution states with unmistakable clarity:
"No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein."
The authority to impose or withhold attorney discipline is a power which reposes by Constitution in this Court. Article V, Section 15, Florida Constitution.[3] I know of no way in which the legislature by statute, or an official of the executive branch by promise or conduct, could legitimately exercise that power on our behalf.[4] It follows that the assistant state attorney was in no way empowered to forestall our power to discipline Ciravolo and Feldman.[5]
Lurie is really not in derogation of this separation of governmental powers doctrine. That case involved disciplinary action against a dentist brought by the state's licensing board  the executive branch *127 agency then charged with statutory licensing and disciplinary responsibilities.[6] Whatever may be the appropriate judicial construction of the legislature's grant of immunity for professionals regulated by the executive branch of government,[7]Lurie in fact did not involve the rationale previously considered and adopted in Massfeller for attorney immunization  the independent constitutional assignment of "exclusive jurisdiction" in this subject area to this Court.
My colleagues and I ultimately disagree, it seems to me, not on what this Court has done in the past but on what it has said. The prosecutor's "promise" of disciplinary immunity to Ciravolo and Feldman (if such it was) may well have been prompted by the Lurie majority's broad sweep of explanatory language and the express (but unfortunate) reference to lawyers. Were it not for these statements, the unique constitutional position of lawyers that was recognized in Massfeller would not only have prevailed in this case but, as is equally important, would have appeared to be prevailing. Lurie would properly have been seen as involving no more than a return to Seymour's more liberal construction of the statutory terms "penalty or forfeiture" for non-lawyer professionals.[8]
Yet another compelling reason exists as to why Ciravolo and Feldman were not entitled to rely on what this Court offhandedly said in Lurie. At the time that their counsel and the assistant state attorney discussed disciplinary immunity, neither Ciravolo nor Feldman had any legal alternative to the production of their records or testimony. They did not then possess something which they any longer had a right to withhold, for they had already received immunity from criminal prosecution. They were not constitutionally free at that juncture to refuse either their testimony or their records.[9] This is precisely why Massfeller is relevant, because, as it announced, the immunity statute is simply not available to an attorney who is not facing criminal prosecution when his records and testimony are sought. The United States Supreme Court,[10] the United States Court of Appeals for the Seventh Circuit,[11] and several state high courts[12] have also held that once criminal responsibility is no longer a threat, testimony may not be withheld. No decisions to the contrary have been called to my attention, or discovered by independent investigation. In this case, Ciravolo and Feldman could not have refused to testify because immunity from criminal prosecution was unequivocally conferred. Any additional *128 promises or beliefs as to the incidental effects of their immunized status were then legally irrelevant.
For these reasons, I conclude that neither the purported promise of disciplinary immunity nor the beliefs or reliance of counsel is adequate to oust the disciplinary jurisdiction of this Court, and that the petition of Ciravolo and Feldman to halt the investigation of The Florida Bar should be denied.
SUNDBERG, J., concurs.
NOTES
[*] It is the State's position that, even absent a subpoena commanding the appearance of Messrs. Ciravolo and Feldman, our proposed discussion will inherently confer upon Messrs. Ciravolo and Feldman full and complete transactional immunity as contemplated by Florida Statute 914.04 as to each and every transaction, matter or thing concerning which they may offer testimony or information.
[1] 170 So.2d at 838-39. Precisely the same issue as governed in Rouss  whether disbarment is a "penalty or forfeiture" within the meaning of the immunity statute  governs this proceeding. Rouss, incidentally, was recently reaffirmed in In re Anonymous Attorneys v. Bar Ass'n of Erie County, 41 N.Y.2d 506, 393 N.Y.S.2d 961, 362 N.E.2d 592 (1977).
[2] The majority, of course, actually does embrace the rationale of Massfeller for Florida attorneys, but only prospectively. It has simply made an exception to the doctrine announced in 1964, and now reasserted, for Messrs. Ciravolo and Feldman.
[3] Nothing else in the Constitution otherwise expressly provides.
[4] See In re The Florida Bar, 316 So.2d 45 (Fla. 1975), holding that the legislature lacks authority to enact a statutory code of ethics for the judiciary, and citing Massfeller with approval. The jurisdictional situation here is no different from any other attempt by one branch to exercise another's powers. For example, the legislature could not by statute authorize its members or any member of the judiciary to grant clemency, which is assigned by the Constitution to the executive branch, and no member of the judiciary could, by promise under a statute which purported to grant such authority, in fact grant executive clemency.
[5] Cf. Stancel v. Schultz, 226 So.2d 456 (Fla.2d DCA 1969), holding that a state attorney cannot grant immunity beyond the scope of his express authority.
[6] §§ 466.06 and 466.08, Fla. Stat. (1969).
[7] Immunity, of course, is a creature of statute. State v. Schroeder, 112 So.2d 257 (Fla. 1959). The differing views on the reach of the immunity statute for non-lawyer professionals are juxtaposed in the majority and dissenting opinions in Lurie.
[8] Lurie also suggested that any authorized official of one branch acts for the "total state", and can obligate all public officials of the other branches. That statement was obviously hyperbole. Under our scheme of explicitly separate powers, I reject the notion, as do my colleagues prospectively, that any one of 20 state attorneys, or any one of their innumerable assistants, can divest this Court of its bar disciplinary responsibilities under any set of circumstances. Obviously, Lurie cannot justifiably be read literally on this point.
[9] They could have refused to testify or to produce records, of course, if they were willing to risk a jail sentence for contempt of court. Their status as attorneys may then have been jeopardized, however, if they were in fact found to be in contempt of court.
[10] Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956).
[11] In re Daley, 549 F.2d 469 (7th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977).
[12] In Re Schwarz, 282 N.E.2d 689 (Ill.), cert. denied, 409 U.S. 1047, 93 S.Ct. 527, 34 L.Ed.2d 499 (1972); Maryland State Bar Ass'n, Inc. v. Sugarman, 273 Md. 306, 329 A.2d 1 (1974), cert. denied, 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975); In Re Epstein, 37 A.D.2d 333, 325 N.Y.S.2d 657 (1971), cert. denied, 405 U.S. 1046, 92 S.Ct. 1313, 31 L.Ed.2d 588 (1972); In re Klebanoff, 21 N.Y.2d 920, 289 N.Y.S.2d 755, 237 N.E.2d 75, cert. denied, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 110 (1968); Committee on Legal Ethics of West Virginia State Bar v. Graziani, 200 S.E.2d 353 (W. Va. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1974).