467 So.2d 734 (1985)
STATE of Florida, Petitioner,
v.
Richard F. RENDINA, Respondent.
No. 84-2632.
District Court of Appeal of Florida, Fourth District.
March 27, 1985.
Rehearings Denied May 15, 1985.
*735 Jim Smith, Atty. Gen., Tallahassee, and Joan Fowler Rossin, Asst. Atty. Gen., West Palm Beach, for petitioner.
David R. Damore and Laura R. Morrison, Fort Lauderdale, for respondent.
DOWNEY, Judge.
By petition for writ of common law certiorari the state seeks review of an order of the circuit court, which held, on Fifth Amendment grounds, that Christopher DeBock could not be compelled to testify in a criminal prosecution. We grant the writ and quash the order under review.
The pending criminal proceeding involves charges against Richard F. Rendina, a lawyer, for offering unlawful compensation to Christopher DeBock, an assistant state attorney, to affect the disposition of a criminal case pending in the Circuit Court of Broward County, Florida. The state subpoenaed DeBock for deposition, but DeBock asserted his Fifth Amendment privilege to refuse to answer questions on the ground that his answers might be used against him in Florida Bar disciplinary proceedings. DeBock contended that the immunization flowing from section 914.04, Florida Statutes (1983), was insufficient to immunize him from Bar disciplinary proceedings; that such protection could only be afforded by the Supreme Court of Florida; and that the burden was upon the state to seek an order of that court immunizing him before the state could compel him to testify. The circuit court agreed with DeBock and entered the order under review, finding that 1) DeBock was entitled to exercise his Fifth Amendment right not *736 to testify without immunity relative to Florida Bar disciplinary proceedings, and 2) the state had the obligation to apply for and obtain a grant of such immunity from the Supreme Court of Florida before seeking to compel DeBock to testify.
The parties concede that by subpoenaing DeBock for deposition in this criminal proceeding, the state has clothed DeBock with use and derivative use immunity via section 914.04, Florida Statutes (1983). Menut v. State, 446 So.2d 718 (Fla. 4th DCA 1984). It is also clear that section 914.04 provides no immunity from disciplinary proceedings instituted by The Florida Bar and that such immunity can be provided only by the Supreme Court of Florida. Ciravolo v. The Florida Bar, 361 So.2d 121 (Fla. 1978); State v. Brodski, 369 So.2d 366 (Fla. 3d DCA 1979). One of the issues here is: who should shoulder the responsibility for seeking such immunity from the supreme court? We hold that a witness in DeBock's position must apply therefor because, when the statutory immunity provided by section 914.04 has been granted by a state attorney, the witness is immunized from criminal prosecution and must testify. The witness cannot, under the Fifth Amendment, refuse to do so because of the potentially adverse use of his testimony in Bar disciplinary proceedings. The reason for this rule is that Bar disciplinary proceedings are remedial, not punitive; they are designed to determine the lawyer's fitness to practice so as to protect the public, not to punish the lawyer in question. Segretti v. State Bar, 15 Cal.3d 878, 126 Cal. Rptr. 793, 544 P.2d 929 (1976); In re March, 71 Ill.2d 382, 17 Ill.Dec. 214, 376 N.E.2d 213 (1978); Maryland State Bar Association, Inc. v. Sugarman, 273 Md. 306, 329 A.2d 1 (1974); In re Connaghan, 613 S.W.2d 626 (Mo. 1981); Anonymous Attys. v. Bar Ass'n of Erie Cty., 41 N.Y.2d 506, 362 N.E.2d 592, 393 N.Y.S.2d 961 (1977); In re Daley, 549 F.2d 469 (7th Cir.1977). The distinction between criminal prosecution and Bar disciplinary proceedings is nicely explicated in In re Daley, 549 F.2d 469, 474-475 (7th Cir.1977):
Denomination of a particular proceeding as either "civil" or "criminal" is not a talismanic exercise, but rather attaches "labels of convenience," In re Gault, 387 U.S. 1, 50, 87 S.Ct. 1428 [1455] 18 L.Ed.2d 527 (1967), and tends to inhibit factual inquiry into the nature of the proceeding itself. The Supreme Court has determined that the "sole concern [of the self-incrimination clause] is, as its name indicates, with the danger to a witness forced to give testimony leading to the infliction of `penalties affixed to criminal acts... .'" Ullmann [v. U.S.], supra, 350 U.S. 422 at 438-39, 46 S.Ct. [497] at 507 [100 L.Ed. 511] quoting Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524 [534], 29 L.Ed. 746 (1886); accord, Kastigar [v. U.S.], supra, 406 U.S. 441 at 453, 92 S.Ct. 1653 [1661, 32 L.Ed.2d 212]. In other words, the privilege against self-incrimination functions as a safeguard against rendering an individual criminally liable or subjecting him to prosecution for commission of a crime through the use of testimony coerced from him. Therefore, a "criminal case," for purposes of the invocation of the Fifth Amendment privilege, is one which may result in sanctions being imposed upon a person as a result of his conduct being adjudged violative of the criminal law.
The essence of state bar disciplinary proceedings, however, is not a resolution regarding the alleged criminality of a person's acts, but rather a determination of the moral fitness of an attorney to continue in the practice of law. Although conduct which could form the basis for a criminal prosecution might also underlie the institution of disciplinary proceedings, the focus is upon gauging an individual's character and fitness, and not upon adjudging the criminality of his prior acts or inflicting punishment for them. As previously stated by this court:
[D]isbarment and suspension proceedings are neither civil nor criminal in nature but are special proceedings, suigeneris, and result from the inherent *737 power of courts over their officers. Such proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent. They are not for the purpose of punishment, but rather seek to determine the fitness of an officer of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice. Thus the real question at issue in a disbarment proceeding is the public interest and attorney's right to continue to practice a profession imbued with public trust.

In re Echeles, 430 F.2d 347, 349-50 (7th Cir.1970) (citations omitted, emphasis added). See also Ex parte Wall, 107 U.S. 265, 288 [17 Otto 265] 2 S.Ct. 569, 27 L.Ed. 552 (1882).
Thus, a clear distinction exists between proceedings whose essence is penal, intended to redress criminal wrongs by imposing sentences of imprisonment, other types of detention or commitment, or fines, and proceedings whose purpose is remedial, intended to protect the integrity of the courts and to safeguard the interests of the public by assuring the continued fitness of attorneys licensed by the jurisdiction to practice law. The former type of proceedings is, in actuality, "criminal" in nature and therefore within the ambit of the Fifth Amendment safeguards against self-incrimination; the latter is not.
A lawyer, just as any other person called as a witness in any proceeding, may properly invoke the Fifth Amendment privilege against self-incrimination if the answer to a question put to him has the tendency to incriminate him, i.e., to subject him to a criminal prosecution. However, a lawyer may not properly invoke the Fifth Amendment privilege against self-incrimination if the answer to a question put to him may result in a Bar disciplinary proceeding but does not have a tendency to incriminate him.
Accordingly, we quash the order under review and remand the cause with instructions that the circuit court direct DeBock to testify pursuant to the state's subpoena or be subject to the contempt powers of the court.
LETTS and WALDEN, JJ., concur.