512 So.2d 164 (1987)
Christopher DeBOCK, Petitioner,
v.
STATE of Florida, Respondent.
No. 67207.
Supreme Court of Florida.
July 16, 1987.
Rehearing Denied September 4, 1987.
Stay Denied November 2, 1987.
*165 David R. Damore, Fort Lauderdale, for petitioner.
Robert A. Butterworth, Atty. Gen., and David K. Miller, Chief Counsel, Economic Crime Lit. Div., Tallahassee, and Penny H. Brill, Asst. Atty. Gen., West Palm Beach, for respondent.
John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel and John A. Boggs, Lawyer Regulation Director, Tallahassee, for The Florida Bar, amicus curiae.
Stay Denied November 2, 1987. See 108 S.Ct. 282.
EHRLICH, Justice.
We have for our review State v. Rendina, 467 So.2d 734 (Fla. 4th DCA 1985). We have jurisdiction pursuant to article V, section 3(b)(3) and article V, section 15, Florida Constitution, and approve the decision of the district court below.
The petitioner, DeBock, was served with a subpoena by the state attorney's office for the Seventeenth Judicial Circuit. DeBock's testimony was sought in connection with criminal charges pending against Richard F. Rendina, an attorney, for offering unlawful compensation to DeBock while DeBock was an assistant state attorney. DeBock asserted his fifth amendment privilege and refused to answer questions at a deposition, contending that the immunity flowing from section 914.04, Florida Statutes (1983), was insufficient to immunize him from bar disciplinary proceedings. DeBock alleged that immunity from bar disciplinary proceedings could only come from this Court and the state had the burden of obtaining such immunity before DeBock could be required to testify. The trial court agreed with DeBock and entered an order finding that he was entitled to invoke his fifth amendment privilege until being granted immunity from bar proceedings, and that the state had to obtain this immunity for him before DeBock could be compelled to testify in the criminal case.
The district court reversed, holding that the witness seeking immunity from bar discipline is the one who has the burden of obtaining it from this Court. The district court reasoned that section 914.04 immunizes a witness solely from criminal prosecution and since bar disciplinary proceedings are remedial and not penal, the immunized witness cannot invoke his fifth amendment privilege and refuse to testify in a criminal case because of the "potentially adverse use of his testimony in bar disciplinary proceedings." 467 So.2d at 736.
DeBock petitioned this Court for review, alleging that the district court's opinion was in conflict with our decision in Ciravolo v. The Florida Bar, 361 So.2d 121 (Fla. 1978), which dealt with two attorneys who had been granted immunity from criminal prosection pursuant to section 914.04 and who claimed that this immunity also extended to bar disciplinary proceedings. DeBock raises numerous issues here. He claims first that bar disciplinary proceedings are penal and, therefore, in order to protect his fifth amendment privilege against compulsory self-incrimination, the grant of statutory immunity must also extend to bar disciplinary proceedings. In support of this contention, DeBock's second claim is that Ciravolo left intact previous decisions of this Court which held that a grant of statutory immunity to a non-attorney witness also immunized the witness from professional license revocation proceedings. According to DeBock, these prior cases support his position that professional disciplinary proceedings are considered penal in Florida. DeBock's third claim is that given our holdings in these prior cases, equal protection demands that an attorney-witness granted statutory immunity be treated the same as an immunized non-attorney witness. We reject each of these suggestions. Because DeBock's claims are all at least partially based on an erroneous view of our decision in Ciravolo, it is with that case that our discussion begins.
Two attorneys, Ciravolo and Feldman, had been subpoenaed to appear before a *166 grand jury; both were granted immunity pursuant to the provisions of section 914.04. Counsel for both the state and the attorneys were of the opinion that the statutory grant of immunity extended to bar disciplinary proceedings, and the attorneys testified before the grand jury pursuant to this understanding. The Florida Bar subsequently instituted disciplinary proceedings against the attorneys based upon the transactions testified to before the grand jury. Ciravolo and Feldman sought a writ of prohibition from this Court in order to stop the bar from taking any disicplinary action. 361 So.2d at 122.
After discussing several of our prior decisions dealing with the immunity statute, Lurie v. Florida State Board of Dentistry, 288 So.2d 223 (Fla. 1973), Headley v. Baron, 228 So.2d 281 (Fla. 1969), Florida Bar v. Massfeller, 170 So.2d 834 (Fla. 1964), and Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952), we concluded that counsel for the state and the attorneys had justifiably relied on our "unfortunate" reference to attorneys in Lurie which had suggested that a grant of immunity to an attorney would also extend to bar disciplinary matters. Therefore, we held:
Since the testimony given in this case was predicated on a justifiable interpretation of this court's strong language in Lurie, and the court's imperfect handling of precedents, we are bound by the understanding reached by counsel in this case.
361 So.2d at 124. We explicitly receded from the unfortunate reference to attorneys in Lurie, and recognized that because of the separation of powers doctrine and this Court's exclusive jurisdiction over attorneys pursuant to article V, section 15 of the Florida Constitution, a state attorney under the executive branch of government had no authority to confer immunity on an attorney-witness from bar discipline; such immunity could only come from this Court. Id. at 124-125.
DeBock's first claim, that bar discipline is penal and therefore, that the grant of statutory immunity must also extend to a bar inquiry in order to protect his fifth amendment privilege, is incorrect. Our decision in The Florida Bar v. Massfeller is controlling.[1] In Massfeller we recognized not only the inherent power of a court to discipline an attorney, but also rejected the idea that an inquiry into an attorney's fitness to practice law is penal, i.e., is designed to punish an attorney. This Court explicitly embraced the reasoning of (then) Judge Cardozo in In re: Rouss, 221 N.Y. 81, 84-85, 116 N.E. 782, 783 (N.Y. 1917), cert. denied, 246 U.S. 661, 38 S.Ct. 332, 62 L.Ed. 927 (1918):
Membership in the bar is a privilege burdened with conditions. A fair private and professional character is one of them. Compliance with that condition is essential at the moment of admission; but it is equally essential afterwards. Whenever the condition is broken the privilege is lost. To refuse admission to an unworthy applicant is not to punish him for past offenses. The examination into character, like the examination into learning, is merely a test of fitness. To strike the unworthy lawyer from the roll is not to add to the pains and penalties of crime. The examination into character is renewed; and the test of fitness is no longer satisfied. For these reasons courts have repeatedly said that disbarment is not punishment. (citations omitted).
170 So.2d at 839. We reaffirm here our holding in Massfeller that bar disciplinary proceedings are remedial, and are designed for the protection of the public and the integrity of the courts. An attorney as an officer of the Court and a member of the third branch of government occupies a unique position in our society. Because attorneys are in a position where members of the public must place their trust, property and liberty, and at times even their lives, in a member of the bar, society rightfully *167 demands that an attorney must possess a fidelity to truth and honesty that is beyond reproach. When an attorney breaches this duty, the public is harmed. Not only is the individual citizen harmed by the unethical practitioner, all of society suffers when confidence in our system of law and justice is eroded by the unethical conduct of an officer of the Court. To protect the public the bar is mandated to inquire into an attorney's conduct when even the appearance of impropriety exists. For these reasons, the vast weight of judicial authority recognizes that bar discipline exists to protect the public, and not to "punish" the lawyer.[2]
DeBock's second and third claims must logically be dealt with together. DeBock alleges that Ciravolo left intact our prior decisions, specifically Lurie, which held that a grant of immunity from criminal prosecution extends to professional license revocation proceedings. From this premise DeBock argues that equal protection demands that an attorney be treated the same as non-lawyer professionals. We reject both suggestions.
First, we point out that the underpinnings of both Lurie and Seymour, upon which DeBock relies, were effectually gutted when section 914.04 was amended by 82-393, section 1, Laws of Florida (1982). Prior to the amendment, the statute provided not only for transactional immunity "which accords full immunity from [criminal] prosecution for the offense to which the compelled testimony relates," Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972), but also provided that "no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify ..." § 914.04, Fla. Stat. (1981) (emphasis added). As interpreted by this Court,[3] a grant of transactional immunity under the prior statute provided that once a witness was immunized, no penalty would follow on account of the transaction testified about; we specifically held in Seymour that whether the penalty was criminal or civil was immaterial. 62 So.2d at 3.
However, the 1982 amendment narrowed the scope of the grant and the statute now provides for only use and derivative use immunity. The Supreme Court in Kastigar held that this is as broad as is constitutionally required to encompass the fifth amendment's protection against compulsory self-incrimination. 406 U.S. at 453, 92 S.Ct. at 1661.[4] By its plain terms, section 914.04 now is limited strictly to "any criminal investigation or proceeding."
Even accepting arguendo DeBock's assertion that Ciravolo left intact Lurie and Seymour, the 1982 amendment to section 914.04 now renders Lurie and Seymour inapposite. Since bar disciplinary proceedings are not penal, the grant of use and derivative use immunity conferred on DeBock extends only to the "criminal investigation or proceeding" concerning Rendina. Therefore, strictly under an analysis of the applicable statutory provision, DeBock had no right sub judice to invoke his fifth amendment privilege until immunized from bar discipline.
However, regardless of this statutory analysis, DeBock's reading of Ciravolo is incorrect. We explicitly limited the "unfortunate" reference to lawyers made in Lurie, and held that a grant of immunity under section 914.04 does not immunize an attorney from bar disciplinary proceedings. 361 So.2d at 124.
*168 Still relying on the validity of Lurie and Seymour DeBock raises an equal protection claim and states that there is "simply no rational basis for applying constitutional guarantees differently to the loss of the license of a certified public accountant, for example, than to the loss of a lawyer's license." As stated, the immunity statute involved in Lurie and Seymour has been significantly narrowed, thus bringing the continued validity of those cases into doubt. Further, in order to dispell the implication nascent in DeBock's argument that he somehow has a "right" to practice law, we point out what should be obvious to all members of the bar: "[a] license to practice law confers no vested right to the holder thereof, but is a conditional privilege which is revocable for cause." Rule 3-1.1, Rules Regulating The Florida Bar.
DeBock further argues, in support of his equal protection claim, that Ciravolo cannot be read to set forth different standards for attorneys than for other regulated professionals. Not only did we explicitly limit Lurie's rational as it applied to attorneys, our opening paragraph in Ciravolo belies DeBock's argument: The question we considered in that case was "whether or not evidence given by an attorney, following a grant of immunity under section 914.04, Florida Statutes (1975), may be used against him in a disciplinary proceeding brought by The Florida Bar;" we answered this question in the affirmative. 361 So.2d at 121.
The 1975 version of section 914.04 at issue in Ciravolo provided for the broad grant of transactional immunity and, as stated, extended to any penalty, whether civil or criminal. By our answer to the question presented in Ciravolo we recognized that an immunized attorney's testimony in a criminal proceeding could be used in a bar inquiry. This clearly sets forth the proposition that attorneys can be held to different standards than other regulated professions. The reasons cited above to explain why bar proceedings are designed to protect the public is also a "rational basis" for holding attorneys to different standards: the unique role of attorneys as officers of the court mandates that attorneys be held to the highest of ethical standards. This difference has been recognized by centuries of jurisprudential thought and is manifested in article V, section 15 of our constitution.
Relying on our separation of powers holding in Ciravolo, DeBock's final argument is that the burden is on the state to seek from this Court bar immunity for an attorney-witness. We reject this suggestion. In Ciravolo we held that an immunized attorney may be granted immunity from bar disciplinary proceedings by order of this Court, "[w]here it appears that the greater good to society will be served by granting immunity from disciplinary action to an attorney ..." Id. at 125. Who would have the burden of obtaining such immunity from this Court was not explicitly addressed in Ciravolo. However, our holdings here and in Ciravolo that the immunity conferred by 914.04 does not extend to bar disciplinary proceedings because they are remedial, not penal, and our recognition in Ciravolo that a state attorney is powerless to interfere with this Court's exclusive jurisdiction over members of the bar, easily leads us to conclude that it is the attorney seeking bar immunity who must so persuade this Court. As we stated in Ciravolo:
The court is concerned about the practice of law by those involved in wrong doings of a criminal nature, but, we are also mindful that this court and the profession should not place a stumbling block in the path of the citizens of this state who strive mightily to uncover and rid our communities of criminal acts.
Id. at 125. It would not only be inconsistent with our separation of powers concerns to place this burden on a state attorney, it would also needlessly "place a stumbling block in the path" of those whose duty is to investigate and prosecute criminal wrongdoing.
Once immunity was granted to DeBock pursuant to section 914.04, he was fully protected from having his testimony used against him in any criminal proceeding. That is the extent of both the statute's reach and the fifth amendment's privilege against compulsory self-incrimination. Should DeBock now refuse to testify in the criminal proceeding below he, like any other similarly situated witness, can be held in contempt of court.
*169 Accordingly, we approve the decision of the district court below.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW and GRIMES, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
I dissent. I cannot agree with the premise from which the majority's conclusion derives. To say that bar disciplinary proceedings are remedial in order to protect the public and are not penal in nature is pure semantic tomfoolery. It totally ignores the numerous cases which have imposed discipline when the conduct involved had no connection with the protection of the public, e.g., in cases where a felony conviction automatically results in discipline without any analysis of the specific crime as it relates to the protection of the public.
I agree, rather, with the United States Supreme Court which has recognized that where the accused attorney asserted his constitutional privilege against self-incrimination and refused to testify, the attorney should "`suffer no penalty ... for such silence.'" Spevack v. Klein, 385 U.S. 511, 514, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (quoting Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 1494, 12 L.Ed.2d 653 (1964)). The Supreme Court stated further that in this context "penalty" is not restricted to fine or imprisonment, rather it means the imposition of any sanction which makes the assertion of the fifth amendment privilege "costly." 385 U.S. at 515, 87 S.Ct. at 628. The Court concluded that the self-incrimination clause extends to lawyers as well as other individuals and "it should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it." Id. at 514, 87 S.Ct. at 627. In In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968), the Court said "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer." In Gardner v. Broderick, 392 U.S. 273, 277, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968), when comparing a police officer's right against self-incrimination with that of an attorney, the Supreme Court agreed with the premise that "a lawyer could not constitutionally be confronted with Hobson's choice between self-incrimination and forfeiting his means of livelihood."
Moreover, the United States Supreme Court ruling in Supreme Court of New Hampshire v. Piper, 470 U.S. 274, 281, 105 S.Ct. 1272, 1277, 84 L.Ed.2d 205 (1985), has cast considerable doubt on this Court's prior statements that the opportunity to practice law is not a right protected by the Constitution:
The lawyer's role in the national economy is not the only reason that the opportunity to practice law should be considered a "fundamental right."
Although Piper used this rationale to void a residency requirement restricting the practice of law to those who live within a state, this dictum nonetheless suggests that the United States Supreme Court is starting to view the practice of law in a far different light than that suggested by the majority. If the opportunity to practice law indeed is a "fundamental right," I see no justification for the majority's holding that bar disciplinary proceedings are not penal in nature. Any proceeding that may strip someone of a fundamental right by definition is "penal" and therefore subject to all the strictures of the fifth amendment.
I therefore must respectfully dissent.
KOGAN, J., concurs.
NOTES
[1] This Court in Ciravolo distinguished Massfeller because Massfeller was not compelled to testify in a criminal proceeding pursuant to the immunity statute. 361 So.2d at 124. Regardless of this distinction, our holding in Massfeller concerning the nature of bar disciplinary proceedings is dispositive of DeBock's claim that such proceedings are "penal." Massfeller is still good law as was recognized both by Justice Adkins, id. at 125, and by Justice England, id. at 125 and 126, n. 2, in Ciravolo.
[2] We note in passing that many remedial statutes, designed to benefit or protect the public, have "penal" aspects; this does not alter their basic purpose and transform them into penal measures. See, e.g., Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969) (Sunshine Law).
[3] In Headley v. Baron, 228 So.2d 281 (Fla. 1969), we overruled Seymour and held that the statute only applied to criminal penalties and forfeitures. In Lurie, we overruled Headley and resurrected Seymour. 288 So.2d at 228.
[4] The Supreme Court held that use and derivative use immunity "prohibits the prosecutorial authorities from using the compelled testimony in any respect," 406 U.S. at 453, 92 S.Ct. at 1661 (emphasis in original), and "it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Id. at 460, 92 S.Ct. at 1665.