464 So.2d 548 (1985)
THE FLORIDA BAR, Complainant,
v.
Stephen G. BENEKE, Respondent.
No. 64090.
Supreme Court of Florida.
February 21, 1985.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Steve Rushing, Bar Counsel, Tampa, for complainant.
Richard T. Earle, Jr. of Earle & Earle, St. Petersburg, for respondent.
PER CURIAM.
The petitioner, respondent before the referee, seeks review of a report of the referee recommending a public reprimand. The findings of fact by the referee, edited for clarity, are as follows:
1. Respondent is and at all times material herein was a member of The Florida Bar subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
2. In late January, 1978 respondent was contacted by a real estate broker with offices close to respondent's law office about a Clearwater office building on the market for sale. Respondent was interested and through the broker came into possession of a sales contract executed by the seller showing a sales price of $245,000.00. There are two of the so-called original contracts for that price, essentially identical in form except for an unexplained but obvious change in the day in January 1978 above the seller's signature signifying acceptance. One is dated January 26, 1978; the other, possibly one of several duplicates, could well have been executed by the seller on January 27 and someone by pencil attempted to change it to correspond with the January 26 contract. Respondent testified that he did not sign the contracts until he went to the Ellis National Bank of Clearwater to obtain financing. At or about the time he submitted his loan application dated January 25, 1978 to the bank, he left with the bank's representative a copy of the $245,000.00 contract.
3. Respondent testified that he thereafter decided to negotiate for a lower price, again through the broker, because the square footage of rentable space in the subject building was substantially less than represented. Ultimately, by contract dated January 20 the seller and respondent agreed upon a price of $159,000.00. Curiously, seller's acceptance of the last contract is dated January 23, 1978 (several days prior to the $245,000 contracts).
4. It is significant that although respondent had to have provided a copy of the $245,000.00 contract to the Ellis Bank, he at no time saw fit to inform the bank or any of its representatives about the final contract, ostensibly made after *549 negotiations had brought about a reduction in the sales price. While the loan application makes no reference to the purchase price of the property, all of the bank's in-house, operational records reflect that the respondent was paying $245,000.00 for the property and was seeking a loan in the amount of $175,000.
5. Although respondent contends that the Bank did not rely on the original $245,000.00 contract provided by him and insists that he had an understanding with the lender that he could receive a first mortgage loan equal to 70% of the appraised value of the property to-wit; $227,000.00, the Referee is of the opinion that the actions of the respondent were subtly intended to support his application for a loan in excess of the purchase price of the property.
6. Based on the $245,000.00 sales contract, on February 23, 1978, Ellis National Bank of Clearwater issued a mortgage of $160,000.00 at 9% interest to respondent on the property, which was $1,000.00 more than the actual negotiated purchase price of the property.
7. On February 23, 1978, respondent purchased the property from the seller for $159,000.00. At the closing, respondent furnished a note in the amount of $5,000.00 and a down payment of $500.00.
8. On December 28, 1978, respondent sold said property to Bruce Taylor, Incorporated, for $230,000.00.
9. The testimony of respondent's former secretary as to respondent's smug exultation after concluding the transaction and his furtive attempts to conceal the original contract all tend to bolster the Referee's opinion that the transaction with the Ellis Bank was tainted. This finding is made notwithstanding the absence of any complaint by the Ellis Bank as to respondent's satisfactory performance of the obligation to it.
The referee found Beneke guilty of violations of Florida Bar Code of Professional Responsibility, DR 1-102(A)(4) (engaging in conduct involving misrepresentation) and Florida Bar Integration Rule, article XI, Rule 11.02(3)(a) (committing an act contrary to honesty and good morals). The referee recommended a public reprimand and payment of costs incurred in the investigation.
We approve the referee's findings of fact and recommended discipline. By the publication of this opinion, we reprimand attorney Stephen G. Beneke. Judgment for costs in the amount of $1,577.75 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and OVERTON, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents.