606 So.2d 360 (1992)
THE FLORIDA BAR, Complainant,
v.
L. VAN STILLMAN, Respondent.
No. 76066.
Supreme Court of Florida.
October 1, 1992.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Bar Counsel, Fort Lauderdale, for complainant.
John A. Weiss, Tallahassee, for respondent.
PER CURIAM.
This cause is before the Court on complaint of The Florida Bar for consideration of the referee's findings and recommendation that attorney L. Van Stillman be disciplined for ethical violations. We have jurisdiction. Art. V, § 15, Fla. Const.
*361 The referee entered detailed findings of fact. At the times in question, Stillman acted as counsel to the Greater New York Mortgage Co. during a real estate transaction. In this transaction, Joel B. Tag was purchasing from Southeast Development of Palm Beaches, Inc., a residence and lot located in Lantana. Greater New York was providing financing. The contract was contingent upon Tag securing a first mortgage loan in the principal sum of $56,250.00. Stillman's written instructions from Greater New York specified that there could be no secondary financing.
When the contract was made, the Lantana property was subject to an existing mortgage lien of $33,000.00 in favor of Lea Bruschi. Stillman secured an assignment of the Bruschi note and mortgage in favor of the seller, Southeast. Tag executed a purchase money second note and mortgage in favor of Bruschi. This document had been prepared by Stillman. Stillman also obtained Tag's signature on a Fannie Mae affidavit stating that there was no subordinate financing.
Title was closed on June 13, 1988. The settlement statement prepared by Stillman stated that Tag had paid $23,804.92 in cash to cover the balance due on the purchase price, borrower's costs, and adjustments. In fact, no such cash was produced or collected at closing, resulting in an overall disparity of $9,195.08.
On or about July 18, 1988, Stillman issued a mortgage title insurance policy to the lender in the amount of $56,250.00. This policy failed to disclose the existence of the Bruschi note and mortgage, which was recorded on or about August 2, 1988. Ultimately, the Tag mortgage went into default and foreclosure.
With regard to the foregoing, the referee found that Stillman had violated the following provisions of the Rules Regulating The Florida Bar: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation). The referee further found that Stillman joined with Tag in perpetrating a deceit. The referee found this to be a violation of Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation).
Also in 1988, Stillman acted as counsel to Greater New York in a separate real estate transaction. L & M Management of the Palm Beaches, Inc., was selling a $170,000.00 residence and lot located in Plantation. The purchaser was Rory D. Kaiser. The sale was contingent upon Kaiser securing a $127,500.00 first mortgage loan. Greater New York agreed to provide this financing.
Once again, the written instructions to Stillman were that no secondary financing would be allowed. Stillman secured the buyer's signature on a Fannie Mae form stating that no subordinate financing existed. However, this was not true. In actuality, Stillman prepared and Kaiser signed two subordinate notes and mortgages. One was in the principal amount of $55,937.97 in favor of H.S. Sibia and Dr. Manjit Kaur Sibia. The other was in the principal amount of $13,500.00 in favor of the seller, L & M.
Stillman closed title on August 8, 1988. The settlement statement he prepared stated that Kaiser had produced a cash sum of $50,314.22 to pay the balance due, borrower's costs, and adjustments. In fact, no cash was produced or collected. The resulting disparity from the settlement statement was $12,162.65.
On or about August 25, 1988, Stillman issued a mortgage title insurance policy to Greater New York in the amount of $127,500.00. The policy failed to disclose the existence of the second and third purchase money notes and mortgages. Later, the Kaiser mortgage went into default and foreclosure.
With regard to the foregoing, the referee found that Stillman had violated: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation). The referee further found that Stillman joined with Kaiser in perpetrating a deceit and that *362 Stillman thereby had violated: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation).
In 1987 or 1988, Stillman acted as counsel to Greater New York on a separate real estate transaction. Kathleen White had agreed to buy property in Palm Beach County for $182,000.00. The seller was Lance Lovejoy. The sale was contingent upon mortgage financing in the principal sum of $135,000.00. Once again, Greater New York instructed Stillman in writing that no secondary financing would be allowed.
At the time the contract was signed, the property was encumbered by an existing mortgage lien in the amount of $40,000.00 in favor of John and Donna Maggard. Stillman prepared, executed, and recorded a satisfaction of mortgage. He also prepared, and White signed, a Fannie Mae affidavit reciting that there was no secondary financing.
In actuality, Stillman prepared two subordinate mortgage agreements. The first, in favor of the Maggards, was for $25,000.00. The second, in favor of Susan Blair-Sheets, was for $5,000.00.
Stillman closed title on January 12, 1988. The settlement statement said that White had paid a cash sum of $51,747.58 toward the balance due, borrower's costs, and adjustments. In actuality, this sum could not have exceeded $21,747.58. The result was a disparity from the settlement statement in the same amount.
On or about January 21, 1988, Stillman issued a mortgagee title insurance policy for $135,000.00. This policy failed to disclose the second and third mortgages. Later, the White mortgage went into default and foreclosure.
With regard to the foregoing, the referee found that Stillman had violated: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation). The referee also found that Stillman had joined with White and others to perpetrate a deceit. This resulted in separate violations of: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation).
In 1987, Wanda A. Godfrey entered into an agreement with Lance Lovejoy whereby the latter agreed to sell Godfrey a $75,000.00 parcel located in North Lauderdale. Sale was contingent upon Godfrey obtaining a first mortgage loan in the principal amount of $54,000.00. Greater New York agreed to provide this amount, and retained Stillman as closing agent. Once again, Greater New York specified in writing that there would be no subordinate financing.
At the time the agreement was made, the property was encumbered with a mortgage lien of $49,000.00 in favor of William and Thelma Lehman. Stillman prepared, had executed, and recorded a satisfaction of this mortgage. Stillman also obtained Godfrey's signature on a Fannie Mae affidavit stating that there was no subordinate financing. In actuality, Godfrey executed a second note and mortgage for $34,000.00 in favor of the Lehmans.
Stillman closed title on November 24, 1987. The settlement statement said that Godfrey paid $24,456.58 toward the balance due, borrower's costs, and adjustments. In fact, no such cash was paid. The resulting disparity from the settlement statement was $34,000.00.
On or about January 12, 1988, Stillman issued a mortgagee title insurance policy to Greater New York in the amount of $54,000.00. This policy failed to disclose the existence of the second note and mortgage Godfrey gave the Lehmans. The Godfrey mortgage was in arrears at the time the hearing below was held.
In finding ethical violations, the referee considered the Godfrey mortgage in combination with the Blackwood transaction, discussed below.
In 1988, Cecile Blackwood entered into an agreement to buy real property in Margate from L & M Management. The agreed price was $105,000.00. The sale was contingent upon mortgage financing in *363 the principal sum of $77,750.00. Greater New York agreed to provide financing and hired Stillman as its counsel in the transaction. Stillman's written instructions specified that no subordinate financing would be allowed.
At the time Blackwood and L & M entered into their agreement, the Margate property was subject to a mortgage lien of $32,500.00 in favor of Jean and Lisa Lavigne. Stillman prepared, had executed, and recorded a satisfaction of this mortgage. He also had Blackwood sign a Fannie Mae affidavit stating that no subordinate financing existed. In actuality, Stillman prepared a second note and mortgage that Blackwood executed in favor of the Lavignes. The amount was $32,500.00.
Title was closed on June 14, 1988. At this time, Stillman prepared a settlement statement showing that Blackwood had paid $33,235.47 toward the balance due, borrower's closing costs, and adjustments. No such cash actually was paid.
On or about July 29, 1988, Stillman issued to Greater New York a mortgagee title insurance policy in the amount of $77,750.00. This policy failed to disclose the existence of the second mortgage. Stillman joined with Blackwood in perpetrating these deceits.
With regard to the foregoing, the referee recommended that Stillman be found guilty of violating the following ethical rules in connection with the transactions with White, Godfrey, and Blackwood: Rule 3-4.3 (acts contrary to honesty); Rule 4-8.4(a) (acts contrary to the Rules of Professional Conduct); and Rule 4-8.4(c) (acts of deceit or misrepresentation).
The referee found no prior disciplinary actions against Stillman. The referee found in mitigation the fact that Stillman's motive involved neither personal gain nor greed, and the fact that the misconduct is unlikely to be repeated. The referee then recommended that Stillman receive a public reprimand and be suspended for six months, with disciplinary costs to be assessed in the amount of $2,080.94. The Bar now asks that the sanction be two years' suspension.
Initially, we accept the referee's findings of fact, which are supported by competent substantial evidence. We are aware, as Stillman argues, that we have not usually allowed substantial discipline in cases involving misrepresentations to lending institutions. See The Florida Bar v. Nuckolls, 521 So.2d 1120 (Fla. 1988); The Florida Bar v. Siegel, 511 So.2d 995 (Fla. 1987); The Florida Bar v. Beneke, 464 So.2d 548 (Fla. 1985). The first of these cases resulted in a public reprimand, and the last two resulted in 90-day suspensions. However, we believe that the overall pattern of misconduct here is so severe, involving so many separate acts of fraudulent conduct, as to require harsher discipline. The amount of money put at risk by Stillman's conduct together with the likelihood he violated federal and state laws warrants a severe penalty.
Accordingly, we adopt the referee's findings regarding ethical violations committed by Stillman but conclude that a greater discipline is warranted. We hereby suspend Stillman from the practice of law for a period of one year and thereafter until he establishes proof of rehabilitation. Suspension shall be effective on November 2, 1992, to allow Stillman time to close out his existing practice. From the date of this opinion, Stillman shall accept no new business and shall promptly take all steps necessary to ensure that the interests of his existing clients are safeguarded. Judgment for costs in the amount of $2,080.94 hereby is entered against Stillman, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.