730 So.2d 1269 (1998)
THE FLORIDA BAR, Petitioner,
v.
Patrick Robert SWEENEY, Respondent.
Nos. 87,526, 89,318 and 89,495.
Supreme Court of Florida.
August 27, 1998.
Rehearing Denied November 10, 1998.
John F. Harkness, Jr., Executive Director and Joseph A. Corsmeier, Assistant Staff Counsel, Tampa, for Complainant.
Scott K. Tozian of Smith and Tozian, P.A., Tampa, for Respondent.
PER CURIAM.
This cause is before us on petition of The Florida Bar to review the referee's report and recommendation regarding the discipline of respondent, Patrick Robert Sweeney, for alleged ethical violations. We have jurisdiction. Art. V, § 15, Fla. Const. For the reasons expressed in this opinion, we suspend respondent from the practice of law for ninety-one days.
By order dated February 20, 1997, the referee consolidated the following disciplinary matters.

No. 87,526
In 1993, respondent represented Ms. George in a lawsuit against Oak Casualty, Ms. George's insurance carrier, for outstanding medical bills incurred from injuries sustained *1270 in an automobile accident. Ms. George owed money to eight different medical providers, including Tampa General Hospital and Dr. Jeffrey Tashman.
In August 1993, pursuant to a settlement agreement, Oak Casualty delivered to respondent nine settlement checks totaling $4,796.72. One check was made payable solely to Ms. George, and the other eight checks were made payable jointly to Ms. George and the specific health care provider named therein.[1] Respondent did not have the authority or consent of the named payees to endorse any of these checks. Despite his lack of authority, respondent endorsed each of the nine checks and then deposited the funds into his law firm's trust account.
Respondent paid the medical providers as Oak Casualty directed, except for two: Tampa General Hospital and Dr. Tashman. Instead of paying Dr. Tashman the $224 that Oak Casualty directed that Dr. Tashman receive, respondent used the money earmarked for Tampa General and paid Dr. Tashman approximately $2000. Respondent testified on his own behalf that the reason he did not pay Tampa General was his belief that Medicaid would pay Tampa General's bill. Respondent's distribution of the settlement proceeds was accomplished without the knowledge or consent of Oak Casualty, Tampa General, or Medicaid.
Based on these facts, the referee recommended that respondent be found guilty of violating Rules Regulating The Florida Bar 3-4.3, 4-1.15(a), (b), 4-8.4(a), (c), and 5-1.1, and not guilty of violating rules 3-4.4, 4-5.3, 4-8.1(a), (b) and 4-8.4(b). The referee made a specific finding that the Bar failed to prove by clear and convincing evidence that respondent intended to defraud anyone by endorsing the settlement checks without authority, depositing the funds into his trust account, and unilaterally altering the distribution of the funds.

No. 89,318
In 1993, respondent began representing Maximo Guevara concerning a workers' compensation claim arising from injuries sustained in 1992. A settlement agreement was reached in which Guevara would receive a single payment of $32,000, which included a $5,000 attorney's fee. Respondent filed Guevara's signed settlement stipulation and affidavit agreeing to the settlement terms with the judge of compensation claims (JCC). Guevara claimed he never signed the affidavit agreeing to the terms of the settlement. The referee found that the signature on the affidavit was not Guevara's. While the referee found that there was insufficient evidence to establish that it was respondent who forged Guevara's name, he did find that there was sufficient evidence to establish that someone in respondent's office knowingly signed Guevara's name to the affidavit. Accordingly, the referee found that respondent was guilty of negligent supervision of his staff and for negligently submitting a fraudulent affidavit to the judge.
Furthermore, respondent stipulated that in August 1995 he received a settlement check from State Farm Fire and Casualty Company for $32,000, which he signed and deposited into his trust account. Pursuant to the mediation agreement, respondent disbursed $27,000 to Guevara and $5000 to himself. The referee did not make a finding of whether respondent signed the settlement check without authority. The referee did find, as in the previous case, that there was a lack of an intent to defraud. The referee recommended that respondent be found guilty of violating rules 3-4.3 and 4-8.4(a), (d), and not guilty of violating rules 3-4.4, 4-1.2, 4-1.4(a), (b), 4-1.15(b), 4-3.3(a), 4-3.4(b), 4-8.1(a), and 4-8.4(b), (c).

No. 89,495
An audit of respondent's trust account from the period of January 1, 1995, to December 31, 1995, revealed shortages. However, the Bar's brief indicates that the *1271 shortages were either inadvertent or beyond respondent's control. Based on a stipulation, the referee recommended that respondent be found guilty of violating rules 5-1.1 and 5-1.2 regarding trust accounts.

Recommended Discipline
Prior to recommending discipline for respondent on the consolidated cases, the referee considered the following regarding the respondent's personal history: (1) respondent was born in 1948; (2) respondent was admitted to the Bar in October 14, 1983; and (3) respondent has two prior private reprimands.[2] The referee found in aggravation a pattern of misconduct and multiple offenses. In mitigation, the referee found the following: (1) absence of a dishonest or selfish motive; (2) timely good-faith effort to make restitution or to rectify consequences of misconduct; (3) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (4) character or reputation; and (5) interim rehabilitation.
As to cases 87,526 and 89,318, the referee recommended the same discipline:
A public reprimand and one year probation. I recommend these conditions of probation: (1) the Respondent contact The Florida Bar's Law Office Management Advisory Service within ten days of the Supreme Court's decision in this case and cooperate in assessing the organizational needs of his office and implementing all of its recommendations; (2) the Respondent will not sign a client's signature to any checks or other documents without having and retaining in the file a written power of attorney; (3) the Respondent will not sign any other person's signature, except his own, to any checks that come through his office without having and retaining in the file a written power of attorney; (4) the Respondent will sign an affidavit that he has complied with these requirements prior to the end of the term of probation; (5) the Respondent will pay $3,515.26 to The Florida Bar before the end of his term of probation.
Pursuant to the stipulation entered between the parties, no additional discipline was recommended for the trust violations under case 89,495.

Guilt
The Bar contends that the referee's findings of fact as to cases 89,526 and 89,318 are not supported by the evidence. Our standard of review regarding a referee's factual findings is as follows:
A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Absent a showing that the referee's findings are clearly erroneous or lacking in evidentiary support, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996) (citations omitted).
Regarding case 87,526, the Bar claims that the referee's failure to find an intent to defraud is clearly erroneous. While we approve the referee's recommendation as to the rule violations in this case, we find that the referee's factual finding that the Bar failed to prove an intent to defraud is clearly erroneous. Respondent's action of signing his client's and several medical providers' signatures to the settlement checks without authority, depositing the funds into his trust account, and then unilaterally altering Oak Casualty's settlement distribution is clear evidence of an intent to defraud.
Furthermore, the referee erroneously accepted respondent's contention that the amount paid by Oak Casualty to Tampa General could be redirected because Medicaid would eventually pay Tampa General's bill. The Bar was correct that this was an intended fraud on the State's medicaid fund.[3] *1272 Thus, the failure to pay Tampa General the money provided by Oak Casualty for that purpose and the use of the money for another purpose were acts done with an intent to defraud Tampa General and the State of Florida, which administers Medicaid.
The Bar also claims that the referee's finding in case 89,318 that respondent did not violate rule 4-8.4(c) by either wrongfully signing or obtaining Guevara's signature on the affidavit submitted to the JCC or by signing the settlement check is likewise clearly erroneous. With this contention we disagree. We find competent evidence in the record to support the referee's findings on this issue.

Discipline
The Bar argues that the referee's recommendation of a public reprimand is not appropriate in light of the serious violations and case law. Specifically, the Bar argues that, on this record, a ninety-one day suspension is more appropriate. Although a referee's recommended discipline is persuasive, we do not pay the same deference to this recommendation as we do to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction. As we stated in Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997), "We will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing case law." After reviewing the record in this case, we agree with the Bar's contention that the referee's recommended discipline is inadequate in this case, and we do not find a reasonable basis for it in existing case law or in the Standards for Imposing Lawyer Sanctions.
Section 4.12 of Florida's Standards for Imposing Lawyer Sanctions (Fla. Bar Bd. Governors 1997), states that "[s]uspension is appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." Respondent engaged in acts involving fraud by signing checks he was not authorized to sign; misrepresenting to the bank that the signatures on these checks where those of the named payees; depositing these funds into his trust account; failing to advise Tampa General that he had received a settlement check on its behalf from Oak Casualty; and then unilaterally altering the distribution of the settlement proceeds. By misdirecting the settlement funds owed to Tampa General and ultimately to Medicaid, respondent clearly created the possibility that Ms. George would suffer harm. Furthermore, in a separate case, respondent was found guilty of the negligent supervision of his staff and of negligently submitting a fraudulent affidavit to a court. We do accept that respondent did not do these acts for personal gain. For this reason, we believe that the discipline determined applicable in Florida Bar v. Burke, 578 So.2d 1099 (Fla. 1991), is applicable here. Accordingly, we find that a ninety-one day concurrent suspension in these consolidated cases is appropriate.

Conclusion
Respondent is hereby suspended from the practice of law for ninety-one days and thereafter until he proves rehabilitation. The suspension will be effective thirty days from the filing of this opinion so that respondent can close out his practice and protect the interests of existing clients, this Court will enter an order making the suspension effective immediately.
Respondent shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $3,515.26 is entered in favor of The Florida Bar and against respondent, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Individually, the nine checks were made payable in the following amounts: (a) Ms. George $333.84; (b) Dr. Shrinath Kamat$384; (c) Diagnostic Labs, Inc.$400; (d) Emergency Associates$156; (e) Tampa City Fire Rescue $98.40; (f) Ruffalo, Hooper and Associates $61.28; (g) Dr. Tashman$224.80; (h) Tampa General Hospital$2,020.40; and (i) Physicians Scanning Association$1,512.
[2] However, the parties agreed and the referee found that the prior reprimands, which occurred in 1988 and 1987, were too remote in time to be considered in aggravation.
[3] Section 409.910(18), Florida Statutes (1995), provides that if an attorney obtains benefits from a third party for medical services provided and for which services medicaid must pay, then that attorney must use the benefits received from the third party to reimburse medicaid. The statute goes on to state that failure to comply with its provisions is fraud.