790 So.2d 1081 (2001)
THE FLORIDA BAR, Complainant,
v.
Daryl James BROWN, Respondent.
No. SC96031.
Supreme Court of Florida.
July 12, 2001.
*1083 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Division Director, Tallahassee, FL; and Brett Alan Geer, Assistant Staff Counsel, Tampa, FL, for Complainant.
Scott K. Tozian of Smith and Tozian, P.A., Tampa, FL, for Respondent.
PER CURIAM.
The Florida Bar has petitioned for review of the referee's report regarding alleged ethical misconduct by attorney Daryl James Brown. We have jurisdiction. See art. V, § 15, Fla. Const. Although we approve the referee's factual findings and recommendations as to guilt, we disapprove the referee's recommended discipline of a public reprimand, and suspend Brown from the practice of law for ninety days.

I. FACTS
The Bar charged Brown with violating eleven provisions of the Rules Regulating the Florida Bar. Following a hearing on contested factual issues, the referee made the following findings.
In 1992, Brown's law firm began representing Riscorp, a Sarasota-based insurance services company. Unbeknownst to Brown, since the late 1980s, Riscorp had engaged in a practice of soliciting campaign contributions from employees and others for political candidates Riscorp officials viewed as favorable to Riscorp's business. To induce such contributions, Riscorp would reimburse contributions made at its request.
In June 1994, Riscorp's president, James Malone, phoned Brown and asked him to help raise money for two candidates for state offices by soliciting a number of personal checks for $500 each. Malone agreed to reimburse these contributions by permitting Brown to "premium bill" on a certain matter that Brown's firm was handling for Riscorp.
Following the phone conversation, Brown solicited contributions from six subordinate attorneys. Each attorney wrote a $500 personal check to each of the two campaigns, as did members of the attorneys' families. Brown gathered a total of thirty-seven personal checks, each for $500, and the checks were delivered to Riscorp. Brown then directed the firm's bookkeeper to issue bonuses to himself and the other contributors to reimburse the total dollar amount contributed. Thereafter, Brown inflated the number of hours that his law firm invoiced to Riscorp to recoup the reimbursement bonuses. Riscorp paid the invoices.
*1084 The referee found that at the time Brown solicited the checks from his firm, Brown was not "politically active" and was not aware of section 106.08, Florida Statutes (1993), which limits contributions to candidates for statewide office to $500 per person and provides criminal penalties for making contributions in excess of that amount. However, Brown was again contacted by Riscorp in October 1994 regarding contribution checks for another campaign. This time, Brown became suspicious and asked another attorney in his firm to research the campaign contribution statutes. When the researching attorney notified Brown of section 106.08, Brown immediately met with Malone and strongly advised him that Riscorp should cease the campaign contribution activities. Malone assured Brown that the practice would stop.
In 1996, federal authorities began investigating Riscorp's campaign contribution activities. Riscorp and several of its officers were indicted, and ultimately one Riscorp officer was convicted of a felony and other officers were convicted of misdemeanors. Thereafter, Riscorp ceased to exist as an operational entity.
Based on the above facts, the referee recommended that Brown be found guilty of violating rule 4-1.2(d) (lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent); rule 4-8.4(a) (lawyer shall not violate or attempt to violate the rules of professional conduct, or do so through the acts of another); rule 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation).
As to discipline, the referee found in aggravation that Brown's misconduct involved a selfish motive, Brown had substantial experience in the practice of law and the misconduct involved multiple offenses. See Fla. Stds. Imposing Law. Sancs. 9.22(b), (d). The referee also found in aggravation that the client was involved in the misconduct and that the misconduct resulted in actual harm to a client or third party. See Fla. Stds. Imposing Law. Sancs. 12.1(a), (b). In mitigation, the referee found that Brown had no prior disciplinary record; had made full and free disclosure; had been cooperative; had an "enviable" reputation; had been active in pro bono activities and charitable causes; had suffered greatly from other penalties; and had expressed deep remorse. See Fla. Stds. Imposing Law. Sancs. 9.32(a), (e), (g), (k), (l). The referee recommended that Brown receive a public reprimand from the Board of Governors and be placed on probation for six months, with the conditions that Brown complete eight hours of continuing legal education and refrain from supervising other attorneys at his firm during the probationary period. The Bar now petitions for review, seeking review of several of the referee's factual findings and recommendations as to guilt, as well as the recommended sanction.

II. GUILT
The Bar challenges many of the referee's factual findings and resultant recommendations as to guilt. Our review of such matters is limited, and if a referee's findings are supported by competent, substantial evidence in the record, this Court will not reweigh the evidence and substitute its judgment for that of the referee. See Florida Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000). In light of our narrow scope of review here, we approve the referee's factual findings and recommendations as to guilt.
The Bar argues that the referee's finding that Brown was not aware of section 106.08, Florida Statutes (1993) (prohibiting campaign contributions in excess of $500) at the time Malone asked him to *1085 solicit contributions is clearly erroneous. At the hearing below, there was testimony on both sides of this matter, with Malone testifying that Brown informed him of section 106.08 prior to soliciting the contributions, and with Brown testifying that he was not aware of section 106.08 at the time. The referee resolved this testimony by crediting Brown's version of events, and although the Bar contends that the referee's credibility call was incorrect, we have long held that the referee is in a unique position to determine such evidentiary matters. See Florida Bar v. Fredericks, 731 So.2d 1249, 1251 (Fla.1999) ("[T]he referee is in a unique position to assess the credibility of witnesses, and [the referee's] judgment regarding credibility should not be overturned absent clear and convincing evidence that [the referee's] judgment is incorrect."). Although other reasonable persons might have reached a different conclusion, it is not our role to reweigh the evidence. Moreover, the fact that the referee found that Brown subsequently became suspicious when he was contacted again by Malone, asked another attorney to research the law and thereafter met with Malone to advise him to stop its reimbursement activities is also consistent with a finding that Malone lacked the intent to violate the campaign laws when he first agreed to the reimbursement scheme. The referee's finding that Brown was unaware of section 106.08 when he solicited the contributions is supported by Brown's testimony, and we decline to reach a different factual finding here.
The Bar next contends that regardless of when Brown became aware of section 106.08, his solicitation of the contributions constituted a first-degree misdemeanor under section 106.08(7)(a), Florida Statutes (1993), and therefore the referee should have recommended guilt as to rule 4-8.4(b) (lawyer shall not commit criminal act which reflects adversely on lawyer's honesty, trustworthiness, or fitness). The referee found that "[t]he evidence did not establish that [Brown] knowingly and willfully violated section 106.08." Rule 4-8.4(b) provides that a lawyer is not to commit a criminal act "that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Assuming without deciding that a violation of section 106.08 does not require that the violation be knowing and willful,[1] we conclude that a negligent violation of the statute in this instance does not reflect adversely on Brown's honesty, trustworthiness, or fitness. We therefore approve the referee's recommendation as to rule 4-8.4(b).
*1086 The Bar also argues that the referee should have recommended guilt as to rule 4-1.1 (lawyer shall provide competent representation) for failing to realize the fraudulent nature of the reimbursement scheme proposed by Malone. However, the referee found that Brown "was not contacted by Riscorp for his opinion regarding the reimbursement practice," and therefore Brown's failure "to immediately recognize the potential impropriety of Riscorp's activity does not reflect on [Brown's] competence." The referee's interpretation of rule 4-1.1 is supported by the comment to the rule, see R. Regulating Fla. Bar 4-2.1, cmt. ("In general, a lawyer is not expected to give advice until asked by the client."), and we approve the referee's recommendation of not guilty as to rule 4-1.1.
Lastly, the Bar argues that Brown violated rule 4-1.13(b) (corporation's lawyer to proceed in best interests of corporation when lawyer knows that officer is engaged in illegal conduct) for failing to report Malone's illegal activity to a higher authority in Riscorp. However, the referee recommended a finding of not guilty because Brown was unaware of the scope of Riscorp's reimbursement practices, and when he became aware of section 106.08, Brown advised Malone, then president of Riscorp, against the practice, and was assured by Malone that the practice would cease. Under these facts, rule 4-1.13(b) does not require referring the matter to a higher authority within the corporation. Rule 4-1.13(b) provides that if a lawyer for a corporation knows that an officer is acting or intending to act illegally in a matter related to the representation, and such act may reasonably be imputed to the corporation, "the lawyer shall proceed as is reasonably necessary in the best interest of the organization," and may refer the matter to a higher authority in the corporation. The referee's finding here that Malone assured Brown that the practice would cease, coupled with Brown's belief of these assurances, supports the referee's conclusion that Brown acted "as reasonably necessary in the best interests of the corporation" as envisioned by the rule.[2] Although additional steps might have been taken by Brown to alert others in the corporation of section 106.08, the Bar has failed to demonstrate that the referee's recommendation of not guilty is not supported by competent substantial evidence and we approve the referee's recommendation concerning rule 4-1.13(b).[3]

III. DISCIPLINE
The referee recommended that Brown be publicly reprimanded by the Board of Governors and be placed on probation for six months. However, the Bar contends that a one-year suspension is appropriate under the facts as found by the referee.[4] Although a referee's findings of fact are given deference, our scope of review of a referee's recommended discipline is broader due to this Court's ultimate *1087 responsibility in determining the appropriateness of the sanction. See Florida Bar v. Vining, 707 So.2d 670, 673 (Fla.1998). However, generally we will approve a referee's recommended discipline so long as it has a reasonable basis in existing caselaw. See Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997). Brown argues that the referee's recommendation of a public reprimand has such support because even if his conduct violated the campaign finance laws, such a violation would only have been a misdemeanor, and this Court has previously imposed public reprimands for attorneys who committed misdemeanor offenses. See, e.g., Florida Bar v. Farinas, 608 So.2d 22 (Fla.1992) (lawyer's commission of misdemeanor of soliciting illegal conduct of notary warranted public reprimand). Farinas involved an attorney who asked a notary to notarize his clients' interrogatories outside of his clients' presence. We find the conduct in this case more egregious than the single act in Farinas.
In our view, it is not solely the fact that the conduct at issue here violated the spirit of the campaign finance laws. Certainly, the nature of the reimbursement scheme should have placed an experienced attorney on notice of a basic problem with what his or her client was requesting. In this regard, the referee found that "[t]he convoluted campaign fund-raising scheme described to [Brown] by his non-lawyer client, including the $500 limit for individual checks, should have caused [Brown] to question the legality of the scheme." In recounting the steps Brown took in order to comply with Malone's request, and considering Brown's twenty-plus years' experience in the practice of law, we agree with the referee that Brown should have known that the scheme was potentially fraudulent as well as illegal.
Malone's request in and of itself should have aroused suspicion. Malone requested that Brown assist Riscorp in its support of two candidates for statewide office by soliciting individual personal checks in amounts not to exceed $500 from the lawyers in his firm and their families. Malone explained that Riscorp would then present these checks to the candidates, but Brown never questioned why checks of no greater than $500 were necessary, or why the monies had to come from individual donors. Malone further informed Brown that Riscorp would reimburse the contributions, and authorized Brown to recoup the reimbursements through "premium billing" in a legal matter being handled by Brown's firm for Riscorp. Even when confronted with Malone's reimbursement plan, Brown did not question the scheme, and instead proceeded to solicit contributions from six subordinate attorneys in his firm, their families, and Brown's own family. All told, Brown gathered 37 personal checks, each written for $500, and then directed the firm's bookkeeper to issue bonuses to himself and the six attorneys who had contributed in the amounts they and their families had collectively contributed. Thereafter, Brown inflated the number of hours that the law firm invoiced Riscorp, roughly doubling his actual time worked. We agree with the referee that given the machinations of this scheme "while the Respondent may not have known the conduct was criminal or fraudulent at the time, given his proficiency and competency as an attorney, he should have realized that the convoluted scheme suggested by Mr. Malone was in violation of campaign contribution laws."
We can only conclude that the reason for Brown's failure to question the proposed scheme was that Riscorp was the largest single client of Brown's law firm in terms of annual billings, and, as found by the referee, Brown "did not want to incur the *1088 ire of his most important client." In this regard, the referee found that Brown's motivations were selfish ones: he was more attuned to appeasing his firm's biggest client than questioning the propriety of the client's request.
Our legal system depends on attorneys who appropriately question requests by clients that should arouse suspicion, and an attorney must not permit his or her judgment to be influenced by the desire to please a client. Although Brown may not have been guilty of purposefully attempting to evade the campaign finance laws, he is responsible for the consequences of blindly acquiescing to his client's wishes without fully considering the consequences and impact of such actions. Moreover, Brown's failure to fully consider the propriety or legality of Malone's request resulted in the involvement of his law firm in this scheme, jeopardizing the firm and other attorneys.
By failing to consider the legality of Malone's request, Brown assisted his client in conduct that Brown should have known was criminal or fraudulent, violating rule 4-1.2(d). In order to achieve Malone's suggested reimbursement, Brown engaged in dishonest conduct by "premium billing" Riscorp, violating rule 4-8.4(c). Brown's rule violations involved his client, and Malone was complicit in Brown's ethical lapses, violating rule 4-8.4(a). In light of the duties violated, the importance of attorneys adhering to the election laws and the improper use of his law firm to perpetuate a fraudulent scheme, we conclude that a public reprimand is not a sufficiently severe sanction.
Although we condemn Brown's conduct, in light of the substantial mitigation found by the referee in this case, we do not agree that the appropriate discipline is a one-year suspension as the Bar suggests. The referee found in mitigation that Brown had no prior disciplinary record, made a full and free disclosure, and demonstrated a cooperative attitude during the proceedings. See Fla. Stds. Imposing Law. Sancs. 9.32(a), (e). In addition, the referee noted that Brown and his firm had suffered additional negative consequences, see Fla. Stds. Imposing Law. Sancs.9.32(k), from Brown's misconduct, including negative publicity, a decrease in the size of Brown's firm and Brown's own divorce. The referee also concluded that Brown demonstrated "deep remorse" for his actions, and "is not just sorry that he got caught in his mistake, or sorry for the adverse impact, but he is deeply ashamed at having violated his own high ethical standards." See Fla. Stds. Imposing Law. Sancs. 9.32(l).
The referee also considered Brown's "enviable" reputation in his community as well as Brown's benevolent character. See Fla. Stds. Imposing Law. Sancs. 9.32(g). Colleagues, clients, community leaders and several jurists testified on Brown's behalf, and the referee concluded that Brown's reputation in his community was that of "a highly competent, ethical attorney." The referee also credited Brown for actively providing pro bono services, and for donating his time to support charitable causes in his community.[5] The referee concluded that "the misconduct that is the subject of these proceedings appears to be a true aberration in *1089 [Brown's] otherwise unblemished twenty-plus year legal career."
Upon consideration of these significant mitigating factors and the purposes of attorney discipline, we find that a rehabilitative suspension does not comport with the purpose of attorney discipline. As we have often stated, the sanction in an attorney disciplinary case must serve three purposes: the judgment must be fair to society, it must be fair to the attorney, and it must sufficiently deter other attorneys from similar misconduct. See Florida Bar v. Wasserman, 654 So.2d 905, 907 (Fla. 1995). We conclude that a ninety-day suspension fulfills these multiple purposes in this case.

IV. CONCLUSION
Daryl James Brown is hereby suspended from the practice of law for ninety days. The suspension will be effective thirty days from the filing of this opinion so that Brown can close out his practice and protect the interests of existing clients. If Brown notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Brown shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $5,631.77 is entered against Brown and in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for which sum let execution issue.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
WELLS, C.J., dissents with an opinion, in which QUINCE, J., concurs.
WELLS, C.J., dissenting.
I do not join in the majority opinion as to either guilt or discipline.
I specifically do not agree with the referee's factual finding that Brown did not realize that his solicitation of these contributions was in violation of section 106.08. I conclude that finding to be erroneous as a matter of law.
What the referee's report and the evidentiary record here depict is a gardenvariety scheme to avoid the election laws. When a lawyer engages himself and his law firm in such a scheme, his conduct is in violation of Florida Rule of Professional Conduct 4-8.4(b). This Court should not excuse such a violation on what is basically an "ignorance of the law" defense. A lawyer is especially presumed to have knowledge of the law since it is obviously a lawyer's stock and trade. Moreover, it defies common sense and logic that Brown collected thirty-seven five-hundred-dollar checks, including checks from his wife and daughter, without an understanding why checks in that amount were necessary.
In respect to discipline, when a lawyer uses a law firm as part of a scheme to violate the law, it is a serious ethical violation. I believe the seriousness of the violation requires proof of rehabilitation before the lawyer should be allowed to continue engaging in the practice of law. Therefore, I would suspend Brown for ninety-one days, which would then require proof of rehabilitation in order to end the suspension.
QUINCE, J., concurs.
NOTES
[1] The statute provides that any person who "knowingly and willfully" makes a contribution to a candidate in excess of $500 commits a first-degree misdemeanor. § 106.08(1)(a), Fla. Stat. (1993). In this instance, the "person" is the corporation, Riscorp, because by reimbursing the contributions, it was in essence making contributions to candidates in excess of $500. Section 106.08(6) further provides that any "attorney or other representative of a corporation ... who aids, abets, advises, or participates in a violation of this section is guilty of a misdemeanor in the first degree." (emphasis added.) Because Brown, an attorney, "participated" in Riscorp's violation of the statute by soliciting the checks and participating in the reimbursement process, under section 106.08(6) Brown may have committed a criminal act, regardless of his lack of knowledge of the statute. While we recognize Brown's argument that Florida courts have not permitted convictions of election laws based on negligence to stand, see, e.g., Fulton v. Division of Elections, 689 So.2d 1180 (Fla. 2d DCA 1997) (negligent failure to adhere to section 106.19, Florida Statutes, requiring that pamphlets state "paid political advertisement," is insufficient to be found in willful violation of election laws), for the purposes of this case we need not reach the question of whether Brown violated the statute.
[2] We note that in light of the referee's findings that Riscorp did not seek Brown's advice as to the reimbursement practices, it is also questionable whether this rule would apply to Brown's situation in any event. See R. Regulating Fla. Bar 4-1.13(b) (lawyer's duty invoked as to corporation when officer's malfeasance is in a "matter related to the representation").
[3] We approve the remainder of the referee's factual findings and recommendations as to guilt without further discussion.
[4] The Bar alternatively contends that disbarment is appropriate if we agree with the Bar's position on the previously discussed points in the petition for review. In light of our approval of the referee's findings and recommendations as to guilt, we do not address the Bar's arguments for disbarment here.
[5] Although this Court has found in the context of more egregious rule violations that an attorney's character and good works do not operate "as a credit" against misconduct, Florida Bar v. Travis, 765 So.2d 689 (Fla. 2000), and that "[p]rior commendable acts cannot exonerate an attorney" from discipline, Florida Bar v. Korones, 752 So.2d 586 (Fla.2000), an attorney's character and reputation may be considered in mitigation under the standards for imposing lawyer sanctions.