905 So.2d 76 (2005)
THE FLORIDA BAR, Complainant,
v.
Daryl James BROWN, Respondent.
No. SC02-2563.
Supreme Court of Florida.
June 9, 2005.
*78 Lawrence M. Hankin, Vice Chair, Twelfth Judicial Circuit, Grievance Committee "A," Sarasota, Florida, John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, and Jodi Anderson, Assistant Staff Counsel, The Florida Bar, Tallahassee, FL, for Complainant.
Scott K. Tozian and Gwendolyn H. Hinkle of Smith and Tozian, P.A., Tampa, FL, for Respondent.
PER CURIAM.
We have for review a referee's report regarding alleged ethical breaches by Daryl James Brown. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons that follow, we approve the referee's report and suspend Daryl James Brown from the practice of law for six months.

PROCEDURAL AND FACTUAL HISTORY
On December 2, 2002, The Florida Bar filed a complaint against Daryl James Brown, alleging violations of Rules Regulating the Florida Bar 3-4.3 (misconduct and minor misconduct) and 4-8.4(c) (misconduct involving dishonesty, fraud, deceit, or misrepresentation). After a formal hearing, the appointed referee made the following findings of fact.
In 1995, Brown was a partner and shareholder in a law firm known as Brown, Clark & Walters, P.A. (BC & W). During this same period, Brown formed Hillview Development Corporation (Hillview), of which he and his wife were the sole owners, each holding 50% of the shares. The purpose of Hillview was to develop a piece of property in Vail, Colorado. On behalf of the corporation, Brown hired J.L. Viele Construction Company, Inc. (Viele) to build a duplex. Unfortunately, a dispute arose between Viele and Hillview. Brown, as president of Hillview, retained BC & W to represent Hillview.
On October 1, 1996, Hillview sold Parcel B of the duplex. However, since Hillview alleged that Viele did not complete its work on the duplex, it did not pay Viele in full. On October 28, 1996, Viele filed a mechanic's lien against both parcels of the duplex in the amount of $279,700.81. Hillview then filed a lawsuit in Colorado state *79 court, alleging that Viele breached the contract and wrongfully filed a lien. Shortly thereafter, Viele filed a lawsuit against Hillview for breach of contract and foreclosure of its lien. The cases were consolidated.
About three months later, Hillview found a buyer who was willing to pay $1,440,000 for Parcel A of the duplex, but Hillview could not sell the property with clear title until either the mechanic's lien was discharged or a proper surety bond was in place and approved by a judge. See generally Colo.Rev.Stat. § 38-22-131 (2000). On March 6, 1997, Brown contacted Pioneer General Insurance Company (Pioneer), a licensed surety company in Denver. Brown spoke to the president of the company, Bob Warburton, about issuing a mechanic's lien discharge bond and identified himself as an attorney from Florida. After the conversation, Brown wrote a letter to Pioneer expressly stating:
My intent is to purchase a certificate of deposit or the equivalent at First Bank of Vail in the approximate amount of $420,000.00, so that the bank will, in turn, pledge the certificate of deposit or otherwise obligate itself directly to Pioneer General, as full cash collateral to Pioneer General for issuing the proposed bond in the amount of $420,000.00.
In reliance on these statements, including the representation that the certificate of deposit would serve as "full cash collateral," Pioneer agreed to issue a bond to cover the mechanic's lien. Brown then filed an "Uncontested Motion for Substitution of Bond and Release of Lis Pendens" with the Colorado court, which the court granted. Hillview was then able to proceed to closing on Parcel A and used a portion of the proceeds to purchase a certificate of deposit in the amount of $420,000 from First Bank of Vail in order to secure the bond.
One week later, Brown, as president of Hillview, executed a security agreement for the benefit of his law firm, pledging the very same certificate of deposit that he had previously pledged to Pioneer as full cash collateral. The security agreement repeatedly stated that "HILLVIEW intends that this security interest of BC & W in the CD have priority over all other claims or interests to the CD by any other creditors of HILLVIEW whatsoever." In addition to establishing a priority interest in the certificate of deposit for the benefit of his law firm, Brown expressly stated in the agreement:
The person executing this Security Agreement on behalf of HILLVIEW hereby personally represents and warrants to BC & W that he is authorized to do so and that this Security Agreement is fully enforceable against HILLVIEW. Further, the undersigned officer [Brown] hereby personally represents and warrants that HILLVIEW is the sole owner of the CD and that HILLVIEW has good and marketable title to the CD free and clear of any claims, liens and encumbrances except liens and encumbrances granted to BC & W. For breach of this warranty, HILLVIEW shall be liable to BC & W for all losses, damages and costs of collection of the same, including but not limited to attorneys' and legal assistants' fees and legal expenses.
In June 1998, the consolidated breach of contract case was tried before a Colorado jury, resulting in a jury verdict in favor of Viele in the amount of $147,000 for the breach of contract claims. In August, Hillview filed for bankruptcy, and the state court action was stayed. After the federal court allowed the state court claim to proceed in rem, the Colorado state court judge issued a ruling on the remaining claims, including Viele's claim for attorney's *80 fees. On February 17, 1999, final judgment was entered against Hillview in the amount of $353,336.11, plus costs, and the judgment further directed Pioneer to pay the judgment. Pioneer thereafter paid $375,374.30 in satisfaction of the judgment against Hillview.
On May 7, 1999, BC & W filed and recorded a UCC-1 financing statement with the Colorado Secretary of State against the proceeds of the certificate of deposit held by First Bank, providing the law firm with a priority interest in the proceeds of the certificate of deposit. Since BC & W, Pioneer, and Viele asserted competing claims against the certificate of deposit, the parties deposited the funds into the registry of the Colorado court. Following settlement negotiations, Brown, as president of Hillview, executed a settlement agreement and mutual release of the claims, whereby BC & W received $100,000, Pioneer received $227,254.98, and the remainder went to Viele and the bank.
On these facts, the referee found that because Brown engaged in "double pledging," Pioneer suffered a net loss of $148,119.32 on the judgment, and further suffered legal expenses of $34,485.90, while Brown's law firm received $100,000 at Pioneer's expense. The referee also expressly found that Brown knew that his conduct in "double pledging" was contrary to honesty and justice. Accordingly, the referee recommended that Brown be found guilty of violating rule 3-4.3 (misconduct and minor misconduct)[1] and rule 4-8.4(c) (dishonesty, fraud, deceit, or misrepresentation)[2]. In light of these violations and after considering certain aggravating and mitigating circumstances, the referee recommended a six-month suspension and the imposition of costs in the amount of $23,006.05.
Brown seeks review of the referee's findings of fact, recommendations as to guilt, and recommendation as to discipline. The Bar cross-petitions for review of the referee's recommendation as to discipline.

REFEREE'S FINDINGS OF FACT AND RECOMMENDATIONS AS TO GUILT
"A referee's findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record." Fla. Bar v. Wohl, 842 So.2d 811, 814 (Fla.2003) (quoting Fla. Bar v. Sweeney, 730 So.2d 1269, 1271 (Fla.1998)). Absent such a showing, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Id. (quoting Sweeney, 730 So.2d at 1271).
Brown first asserts that the referee erred in finding that he possessed the requisite intent to support a violation of rule 4-8.4(c) because the referee failed to examine his intent at the time he pledged the second security interest in the certificate, and instead merely focused on Pioneer's *81 subsequent financial loss. Brown is correct that in order to sustain a violation of rule 4-8.4(c), the Bar must prove intent. See Fla. Bar v. Lanford, 691 So.2d 480, 480-81 (Fla.1997) ("In order to find that an attorney acted with dishonesty, misrepresentation, deceit, or fraud, the Bar must show the necessary element of intent."). The intent element can be satisfied, however, merely by showing that the conduct was deliberate or knowing. Fla. Bar v. Fredericks, 731 So.2d 1249, 1252 (Fla.1999); see also Fla. Bar v. Smith, 866 So.2d 41, 46 (Fla.2004) (recognizing that the motive behind the attorney's action was not the determinative factor but instead the issue was "whether the attorney deliberately or knowingly engaged in the activity in question"). In the instant case, the record supports the referee's findings as to this element.
Further, contrary to Brown's characterization of the referee's report, the referee did not simply focus on Pioneer's subsequent financial loss. The basis for the referee's recommendation that Brown be found guilty of violating rule 4-8.4(c) was Brown's conduct in representing to Pioneer that he would obtain a certificate of deposit to serve as "full cash collateral" for the bond and then a week later, pledging this same security to his own law firmconduct which the referee found Brown knew "was contrary to honesty and justice." Moreover, the security agreement with the law firm explicitly stated that Hillview was the sole owner and that the certificate of deposit was "free and clear of any claims." In addition, the security agreement with his law firm purported to give his law firm priority over any other claim or interest. Although Brown and his law partners attempted to excuse this clear misrepresentation by testifying that Brown failed to read the agreement and that the contract was based on boilerplate language, the referee found such testimony unworthy of belief. Other testimony presented at the hearing indicated that Brown was a detail-oriented attorney who was always prepared. We defer to the referee's assessment in this regard. See Fla. Bar v. Batista, 846 So.2d 479, 483 (Fla.2003) ("Because the referee is in the best position to judge the credibility of the witnesses, we defer to the referee's assessment and his resolution of the conflicting testimony.").
Brown next contends that his conduct in this matter was not dishonest for several reasons. First, he essentially argues that his conduct in "double pledging" the certificate of deposit was not dishonest because the final written agreement between Hillview and Pioneer did not prohibit subsequent security interests. Second, he argues that his conduct was not dishonest because BC & W was a "junior secured creditor" and Pioneer was a "senior secured creditor," and it was actually Pioneer's fault, because it failed to properly protect its interest, that a significant portion of the certificate of deposit's proceeds were ultimately distributed to BC & W.
We disagree. An attorney's ethical obligation of honesty is not bounded by contractual duties. Thus, although the parties' written agreement did not expressly prohibit subsequent security interests, Brown was not free to simply disregard the affirmative oral and written representations he initially made which induced Pioneer to agree to issue the bond in the first place. Additionally, contrary to Brown's statements, BC & W was not given a "junior security interest." Instead, as recognized by the referee, the law firm's agreement explicitly provided that Hillview intended for BC & W's security interest in the certificate of deposit to "have priority over all other claims or interests to the certificate of deposit by *82 any other creditors of HILLVIEW whatsoever." Moreover, the agreement further stated that Brown personally represented that the certificate of deposit was clear of any other claims at the time of the contract, despite the fact that Brown himself already pledged the certificate of deposit to Pioneer as full cash collateral. This is clearly sufficient support in the record for the referee's findings that the "double pledge" was dishonest under these circumstances.
Next, Brown contends that the referee erred in finding that he violated ethical rules by not advising Pioneer that he pledged Hillview's security to his law firm. Brown's arguments in this regard miss the point. First, the referee did not find that Brown violated the relevant rules only because he failed to inform Pioneer about the second pledge to his own law firm. The referee looked to this circumstance in determining Brown's general intent regarding the double pledging. This does not equate to a finding that this act alone violated Brown's ethical obligations. The referee's finding that Brown committed a knowing misrepresentation was based upon Brown's conduct in initially representing to Pioneer that the certificate of deposit would serve as full cash collateral for the bond and then, within a week, making a second pledge of the certificate of deposit. The fact that Brown deliberately kept this from Pioneer supports the referee's finding that this was a knowing misrepresentation.
Finally, Brown asserts that the referee's recommendation that he be found guilty of attorney misconduct violates the Equal Protection Clause and Florida's constitutional right of access to the courts because it prohibits him from litigating private contractual disputes on behalf of a corporation in the same manner as other non-attorney citizens. In DeBock v. State, 512 So.2d 164 (Fla.1987), this Court heard and rejected a similar challenge. In that case, attorney DeBock was subpoenaed for testimony in connection with criminal charges pending against attorney Richard F. Rendina for offering unlawful compensation to DeBock while DeBock was an assistant state attorney. DeBock asserted his Fifth Amendment privilege and refused to answer questions at a deposition, contending that the statutory immunity to which he was entitled was insufficient to immunize him from bar disciplinary proceedings and that he was thus entitled to invoke his Fifth Amendment privilege unless this Court granted him immunity from bar disciplinary proceedings. Id. at 165. The trial court agreed, but the district court reversed, holding that a witness cannot invoke a Fifth Amendment privilege and refuse to testify in a criminal case because of the "potentially adverse use of his testimony in bar disciplinary proceedings." Id. (quoting State v. Rendina, 467 So.2d 734, 736 (Fla. 4th DCA 1985)). DeBock sought this Court's review, contending that equal protection demands that an attorney witness who is granted statutory immunity be treated the same as an immunized non-attorney witness. The Court rejected this challenge, holding that the protection of the public served as a rational basis for holding attorneys to different standards since "the unique role of attorneys as officers of the court mandates that attorneys be held to the highest of ethical standards." Id. at 168.
In this matter, the same rationale applies. An attorney's ethical obligations are separate and distinct from any contractual obligations by which he or she may be bound. Additionally, attorneys must be and are held to the highest of ethical standards and, unlike non-attorney citizens, are subject to discipline for a breach of those standards. Accordingly, we reject *83 Brown's constitutional challenges and approve the referee's recommendation that he be found guilty of violating rules 3-4.3 and 4-8.4(c).

REFEREE'S RECOMMENDATION AS TO DISCIPLINE
As a result of the violations discussed above, the referee recommended that Brown receive a six-month suspension plus imposition of the costs of the proceedings. The referee's recommendation in this regard was based, in large part, upon her consideration of the following aggravating factors: (1) Brown's prior disciplinary history;[3] (2) his selfish motive in placing the interests of his own law firm above the bonding company which relied upon Brown's representations regarding the certificate of deposit as "full cash collateral"; (3) his refusal to accept responsibility for his misconduct; (4) his substantial experience in the practice of law and specifically in construction litigation; and (5) his indifference to making restitution to Pioneer. In contrast, the referee found only one mitigating factor: Brown's reputation and character. Specifically, the referee found that Brown has a lengthy and distinguished record for charitable and other philanthropic involvement in the community, including serving on the Board of Directors for the United Way, participating in the American Heart Association, the American Cancer Society, Special Olympics, the Humane Society, the Boys and Girls Club, United Cerebral Palsy, Cystic Fibrosis, and legal pro bono work.
Both parties seek review of the referee's recommended sanction. Brown contends that the recommendation of a six-month suspension is too harsh and that he should receive a public reprimand. The Bar argues that the recommendation is too lenient in light of the aggravating factors and applicable standards.
The standard of review applicable to a referee's disciplinary recommendation is as follows:
In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because ultimately it is the Court's responsibility to order the appropriate sanction. See Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking this Court will not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions.
Fla. Bar v. McFall, 863 So.2d 303, 307 (Fla.2003). Thus, as a starting point, we look to the Florida Standards for Imposing Lawyer Sanctions. Standard 5.1 (failure to maintain personal integrity) applies to criminal acts by lawyers and also generally to other conduct involving dishonesty, fraud, deceit, or misrepresentation. Standard 5.11 provides that absent aggravating or mitigating circumstances, disbarment is appropriate when a lawyer engages in "intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." Under standard 5.13, however, a public reprimand is appropriate when a lawyer knowingly engages in dishonest conduct that adversely reflects on the lawyer's fitness to practice law. Thus, under these standards, especially after giving consideration to the various aggravating and mitigating circumstances that may be present in a particular case, a wide *84 range of discipline for dishonest conduct by a lawyer may be permissible.
This Court must also review existing case law to determine whether there is a basis for the recommended discipline. Although the facts and circumstances of this case are somewhat unique, this Court has reviewed numerous cases addressing various acts of dishonesty by attorneys and has imposed suspensions similar to that recommended by the referee in this case. See, e.g., Fla. Bar v. Stillman, 606 So.2d 360 (Fla.1992) (imposing one-year suspension due to a pattern of fraudulent and dishonest conduct in relation to representation of a mortgage company); Fla. Bar v. Siegel, 511 So.2d 995 (Fla.1987) (imposing ninety-day suspension due to deliberate scheme to misrepresent facts in order to secure full financing for purchase of a law office).
Here, Brown knowingly and dishonestly failed to abide by his own representations and did so for the benefit of his own law firm, causing Pioneer significant financial injury. We conclude that the referee's recommendation of a six-month suspension appropriately takes into account the specific facts and circumstances of this case, including the aggravating and mitigating circumstances found,[4] and is supported by a reasonable basis in existing case law and applicable disciplinary standards.
Daryl James Brown is hereby suspended for a period of six months. The suspension will be effective thirty days from the filing of this opinion so that Brown can close out his practice and protect the interests of existing clients. If Brown notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Brown shall accept no new business from the date this opinion is filed until the suspension is completed and he is reinstated to the practice of law. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Daryl James Brown in the amount of $23,006.05, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Rule 3-4.3 provides in full:

The standards of professional conduct to be observed by members of the bar are not limited to the observance of rules and avoidance of prohibited acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney's relations as an attorney or otherwise, whether committed within or outside the state of Florida, and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline.
[2] Rule 4-8.4(c) provides, "A lawyer shall not... (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
[3] In 2001, Brown received a ninety-day suspension for engaging in a reimbursement scheme to enable a client to attempt to circumvent campaign contribution laws in its support of two political candidates. See Fla. Bar v. Brown, 790 So.2d 1081 (Fla.2001).
[4] Brown has challenged several of the aggravating factors found by the referee. We find these challenges to be without merit and reject them without further discussion.