# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2026-0121
Lower Tribunal No. 2020-DR-002544

_____

MELISSA ELIZABETH HARRELL HESSERT,

Petitioner,

v.

GARY BELL HESSERT and MEGAN WIELAND-PULAYYA,

Respondents.

_____

Petition for Writ of Certiorari to the Circuit Court for Orange County.
Alicia Peyton Robinson, Judge.

March 20, 2026

PRATT, J.

The petition for writ of certiorari, docketed January 15, 2026, is denied without further discussion.

We write to address the petition's concerning citation to non-existent cases, as well as the petition's concerning citation to actual cases which do not stand for the legal propositions asserted in the petition. From all appearances, the petition bears the hallmarks of having been produced by Petitioner—a pro se filer—with the

assistance of generative artificial intelligence ("AI")[1] but without Petitioner having put sufficient guardrails into place to ensure the accuracy of the cases cited in her petition or the accuracy of the legal propositions for which the cases are cited in her petition.

Here, the petition filed by Petitioner cites to thirteen cases. Only four of the cited cases both exist and are cited for legal propositions that the cited cases actually represent. Five of the cited cases do not exist. Four of the cited cases are cited for legal propositions that the cited cases do not actually represent.

Courts across the United States, including Florida's appellate courts, are currently grappling with an influx of court filings produced by pro se litigants and attorneys alike with the assistance of AI that cite non-existent cases or that cite actual cases for inaccurate legal propositions. *See, e.g.*, *Russell v. Mells*, 50 Fla. L. Weekly D2609, 2025 WL 3533637 (Fla. 2d DCA Dec. 10, 2025) (case involving an attorney's improper use of AI); *Clerk of Ct. & Comptroller for 13th Jud. Cir., Hillsborough Cnty. v. Rangel*, No. 2D2024-1772, 2025 WL 2486314 (Fla. 2d DCA

---

[1] "Generative AI[—i.e., generative artificial intelligence—]are deep-learning models that compile data to generate statistically probable outputs when prompted. . . . Generative AI can create original images, analyze documents, and draft briefs based on written prompts. Often, these programs rely on large language models. The datasets utilized by generative AI large language models can included billions of parameters making it virtually impossible to determine how a program came to a specific result. . . . [G]enerative AI can hallucinate or create inaccurate answers that sound convincing." Fla. Bar Ethics Op. 24-1, at 1-2 (Jan. 19, 2024) (citations and internal quotation marks omitted).

Aug. 29, 2025) (case involving an attorney's improper use of AI); *Takefman v. Pickleball Club, LLC*, 418 So. 3d 826 (Fla. 3d DCA 2025) (case involving a pro se litigant's improper use of AI); *Goya v. Hayashida*, 418 So. 3d 652 (Fla. 4th DCA 2025) (case involving a pro se litigant's improper use of AI); *Gutierrez v. Gutierrez*, 399 So. 3d 1185 (Fla. 3d DCA 2024) (case involving a pro se litigant's improper use of AI). Although AI is a relatively new technology, and although AI may have appropriate uses in the legal field, there is simply no excuse for pro se litigants or attorneys to file briefs, motions, and other filings in Florida's appellate courts that cite to cases without first performing the necessary and simple steps of (1) cite-checking the cases to ensure they actually exist and (2) cite-checking the cases to ensure they actually represent the legal propositions asserted. *See, e.g.*, *Russell*, 2025 WL 3533637, at *6 ("To state the obvious, it is a fundamental duty of [pro se litigants and] attorneys to *read* the legal authorities they cite in appellate briefs or any other court filings to determine that the authorities stand for the propositions for which they are cited." (citation omitted)); *Goya*, 418 So. 3d at 655 ("An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system." (citation omitted)). This is true regardless of whether such filings are prepared with or without the assistance of AI.

Florida's appellate courts, like other courts, require pro se litigants and attorneys to sign their filings and thereby represent the accuracy thereof. *See, e.g.*,

3

Fla. R. App. P. 9.045(d) ("All documents filed with the court must be signed as required by Florida Rule of General Practice and Judicial Administration 2.515."); Fla. R. Gen. Prac. & Jud. Admin. 2.515(d)(2) ("On filing, each signer represents that: (A) the signer has read the document; (B) to the best of the signer's knowledge, information, and belief, there are good grounds to support the document; and (C) the document is not interposed for delay."). Members of the Florida Bar—who are officers of the court—must also comply with their ethical duties when they sign and make filings in Florida's appellate courts. *See, e.g.*, *Fla. Bar v. Brown*, 905 So. 2d 76, 82 (Fla. 2005) ("[T]he unique role of attorneys as officers of the court mandates that attorneys be held to the highest of ethical standards." (quoting *DeBock v. State*, 512 So. 2d 164, 168 (Fla. 1987))); *Boca Burger, Inc. v. Forum*, 912 So. 2d 561, 571 (Fla. 2005) ("[Appellate courts] depend on counsel to accurately state both the facts and the applicable law. Therefore, regardless of trial counsel's conduct or representations, appellate counsel (who often is separate from trial counsel) has an independent ethical obligation to present both the facts and the applicable law accurately and forthrightly."); *Russell*, 2025 WL 3533637, at *6 ("As judges, we rely on attorneys to ethically represent their clients. We expect that representation to be zealous, honest, and competent. Indeed, lawyers owe the courts and their clients a duty to practice with competence and candor. . . . By signing an appellate brief, a lawyer certifies that he or she has read the document and that to the best of the

4

lawyer's knowledge, information, and belief there are 'good grounds to support the document.'" (first citing R. Regulating Fla. Bar 4-1.1; then citing R. Regulating Fla. Bar 4-3.3(a)(1); and then quoting Fla. R. Gen. Prac. & Jud. Admin. 2.515(d))); R. Regulating Fla. Bar 4-1.3 ("A lawyer shall act with reasonable diligence . . . in representing a client."); *see also Black's Law Dictionary* 573 (12th ed. 2024) (providing several definitions of "diligence," including "[t]he attention and care required from a person in a given situation; care; heedfulness"); *The American Heritage Dictionary* 507 (5th ed. 2011) (similar).

Florida's appellate courts have the authority and the duty to maintain the integrity of the proceedings before them, including where appropriate sanctioning pro se litigants and attorneys who fail to follow the Florida Rules of Appellate Procedure and court orders. *See, e.g.*, Fla. R. App. P. 9.410(a) ("After 10 days' notice, on its own motion, the court may impose sanctions for any violation of these rules, or for the filing of any proceeding, motion, brief, or other document that is frivolous or in bad faith. Such sanctions may include reprimand, contempt, striking of briefs or pleadings, dismissal of proceedings, costs, attorneys' fees, or other sanctions."); *Ardis v. Ardis*, 130 So. 3d 791, 796 (Fla. 1st DCA 2014) ("We conclude that sanctions are appropriate in accordance with Florida Rule of Appellate Procedure 9.410 and this court's authority to control its docket." (citations omitted)). Florida's appellate courts also have the authority and the duty to safeguard the

5

integrity of the legal profession, including where appropriate referring an attorney to the Florida Bar for potential disciplinary action. *See, e.g.*, Fla. Code Jud. Conduct, Canon 3D.(2) ("A judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action."); *Russell*, 2025 WL 3533637, at *6 ("When a lawyer cites imaginary legal authorities to our court as if they were law, we are compelled to refer that lawyer to the Bar because of the professional rules of conduct."); *see generally* R. Regulating Fla. Bar 3-7.18 (rule governing the disposition of inquiries or complaints referred to the Bar by members of the judiciary).

All filers in cases before the Sixth District Court of Appeal should take notice: our Court will remain vigilant to ensure that filings signed by pro se litigants and attorneys alike—including filings prepared with or without the assistance of AI— both: (1) do not cite to non-existent cases and (2) do not cite to cases for inaccurate legal propositions. If and when any such erroneous filings are made in a given case before our Court, filers on the opposite side of the case should point out such errors to our Court either in their responsive filings or via motion. To avoid the potentiality of the issuance of orders to show cause, pro se litigants and attorneys should remember their obligation to cite-check all cases cited in their filings in Florida's appellate courts prior to making their filings—regardless of whether their filings are

6

prepared with or without the assistance of AI. Pro se litigants and attorneys should also remember that they cannot satisfy their aforementioned obligation by relying upon AI to cite-check the cases cited in their filings. *See, e.g.*, Fla. R. App. P. 9.045(d); Fla. R. Gen. Prac. & Jud. Admin. 2.515(d)(2); *see generally Russell*, 2025 WL 3533637, at *4 n.3.

In the petition at issue in this case, Petitioner has provided citations to a number of cases, some of which exist and some of which do not. Petitioner is directed to provide copies of each and every case cited in the petition that actually exists with highlighted quotations or language that support the assertions made in the petition. These cases shall be filed in a supplemental appendix, indexed for each case, with this Court within ten days of the issuance of this opinion.

In light of the foregoing, Petitioner is directed to show cause within ten days of the issuance of this opinion why she should not be sanctioned for filing a petition that contains non-existent cases and that cites to cases for inaccurate legal propositions. Potential sanctions include the imposition of a requirement that a member of the Florida Bar in good standing review and sign any future filings in this Court on behalf of Petitioner in any matter in which she seeks review of the underlying action (Lower Tribunal No. 2020-DR-002544).

PETITION DENIED. ORDER TO SHOW CAUSE ISSUED.

WHITE and BROWNLEE, JJ., concur.

7

Melissa Elizabeth Harrell Hessert, Clermont, pro se.

Michelle Stile, of Stile Law, PLLC, Orlando, for Respondent, Gary Bell Hessert.

Megan Wieland-Pulayya, Orlando, pro se.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED